# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 2005 Session

## ROBERT D. WALSH v. STATE OF TENNESSEE
**Appeal by permission from the Court of Criminal Appeals**
**Shelby County Criminal Court**
**No. P-26520  Arthur T. Bennett, Judge**

---

**No. W2003-02040-SC-R11-PC  - Filed June 24, 2005**

---

This case comes before us on appeal from a denial of post-conviction relief.  The petitioner sought relief from his conviction for aggravated sexual battery, raising several claims including that he was denied his right to a fair and impartial jury trial because of an improper communication by a court officer to the jury during deliberations. During the hearing on the post-conviction petition, the court heard testimony from a juror regarding the content of the communication and also the subjective effect of the officer's statement upon the juror.  At the close of the hearing, the trial court found that the improper communication had not influenced the verdict and therefore denied the petition for post-conviction relief.  Upon review, the Court of Criminal Appeals affirmed.  In this Court, the petitioner challenges admission of the juror's testimony relating to the effect of the court officer's statement on the juror.  After thorough consideration, we reverse the Court of Criminal Appeals. We hold that Tennessee Rule of Evidence 606(b) prohibits introduction of juror testimony concerning the effect on the juror of an improper communication by a court officer during jury deliberations.

### Tenn. R. App. P. 11 Application for Permission to Appeal;
### Judgment of the Court of Criminal Appeals Reversed

WILLIAM M. BARKER, J., delivered the opinion of the court in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

C. Michael Robbins, Memphis, Tennessee, for the appellant, Robert D. Walsh.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Elizabeth T. Ryan, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

## Facts

In 1998, the petitioner was indicted in Shelby County on charges of aggravated sexual battery and rape of a child. A criminal court jury found the petitioner guilty of aggravated sexual battery, but not guilty of rape. The trial court sentenced the petitioner to a term of ten years imprisonment. Upon appeal, the Court of Criminal Appeals affirmed the conviction, but modified the sentence to allow the petitioner to be eligible for release after serving thirty percent of his sentence, rather than one-hundred percent as ordered by the trial court. See State v. Robert D. Walsh, W1999–01473-CCA-R3-CD, 2001 WL 91949 (Tenn. Crim. App. Jan. 30, 2001). The petitioner was denied permission to appeal the conviction in this Court.

In June 2002 the petitioner filed a petition for post-conviction relief, alleging, among other things, that he had been denied his right to a fair and impartial jury trial due to an improper communication to the jury by a deputy sheriff who was acting as a court officer. At a hearing on the petition on May 2, 2003, one of the witnesses called to testify was Linda Busby, who had been one of the jurors in the petitioner's trial.

Ms. Busby testified that at one point during deliberations, she and the other jurors had voted unanimously to find the petitioner not guilty of rape of a child. However, the vote on the charge of aggravated sexual battery had been divided, with eleven jurors voting guilty and one voting not guilty. Ms. Busby was the lone dissenting vote.

Sometime after this vote was taken, a court officer entered the jury room and was told by one of the other jurors that the jury could not reach a decision on one of the charges. Then, according to Ms. Busby, the court officer made a statement to the effect that the jury was required to make a decision. Although Ms. Busby could not recall the officer's exact words, she testified that he "almost jokingly or kind of laughed [and] said, 'you have to' or 'you must' or something to that effect. 'You have to reach a decision.'" Ms. Busby was convinced that the other members of the jury also heard the officer's remark. After this exchange with the court officer, another ballot was taken, and the jury returned a unanimous verdict of guilty on the charge of aggravated sexual battery.

On cross-examination, the State asked Ms. Busby a series of questions touching upon the effect of the officer's statement upon her deliberations. Pertinent portions of this cross-examination were as follows:

> Q (by the State): This motion that's pending before Judge Bennett right now indicates that because of what this deputy said that you, Ms. Busby, changed your vote from not guilty to guilty.

A (by Ms. Busby): It was not because of what he said. I mean, it made me realize that I did have to make a decision. But, I made the decision to change my vote, I believe, because I'm obviously not a very self-confident person. And, I felt that if eleven other people felt he was guilty, I thought it was something wrong with me that I couldn't see that.

Q: This motion says that you felt that you were required – – –

A: No.

Q: To reach a verdict and find him guilty?

A: No, I have been on other juries and I'm sorry, that's not true.

Q: This motion also says that you felt that you had, and I'm going to quote this directly. "Ms. Busby felt that she had to make a decision in line with the other eleven jurors." End of quote. Is that a correct statement?

A: No, sir.

Q: Are you telling Judge Bennett that you reached a verdict on this case and the verdict that you did reach was your own independent verdict?

A: Yes, it was.

Q: Are you telling the Court that you found Mr. Walsh guilty of aggravated child abuse only because of the statements made to you by the deputy?

A: No.

Q: Why did you reach the verdict that you reached, Ms. Busby?

A: Well, I think I just stated that. That after sitting there and I had everyone at the table go around and tell me again why they felt that he was guilty. And, I just felt it must be something wrong with me that I could not see it. And, I never did see it. But, I felt that I needed to go with them because of that. Because of my lack of self-confidence.

. . . .

Q: Did anybody put any pressure on you in order for you to reach that decision?

A: No.

Q: Did anybody force you in order to get you to reach that decision?

A: No.

Q: Do you feel as if anybody engaged or exerted any improper influence upon you in order for you to reach that decision?

A: No.

Q: Did any of the other eleven members of the jury ever state to you that they felt they were reaching a, on voting a certain way because of what a deputy may have said to them?

A: No.

Neither the court officer nor any of the other jurors were called to testify about these events. Therefore, based upon Ms. Busby's testimony, the court found that an improper communication had

been made to the jury, but that this communication had not affected the verdict. Accordingly, the court denied post-conviction relief on this ground.

The petitioner appealed to the Court of Criminal Appeals which, upon review, agreed that the court officer's statement to the jury had been improper. The court also recognized that the improper communication raised a presumption of prejudice which the State was required to sufficiently rebut in order to sustain the verdict. The court was of the opinion, however, that there would be no way for the State to rebut this presumption without allowing the juror to testify about how the court officer's statement may have influenced her. Therefore, the Court of Criminal Appeals held that admission of the juror's testimony was proper and affirmed the denial of post-conviction relief. We granted permission to appeal to address whether a juror may testify about the effect on his or her deliberative process of an improper communication to the jury by a court officer during deliberations.

## **Analysis**

We first address the State's argument that the issue of improper influence on the jury has been waived by the petitioner due to his failure to raise it during his direct appeals. However, the State did not assert the defense of waiver at the post-conviction hearing; instead, the State raises it for the first time in this Court. By doing so, the State has denied the petitioner an opportunity to rebut the presumption that this issue has been waived. See Tenn. Code Ann. § 40-30-110(f) (2003) (providing that "[t]here is a *rebuttable presumption* that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived") (emphasis added). Under these circumstances, we conclude that the State's waiver argument has itself been waived. Issues not addressed in the post-conviction court will generally not be addressed on appeal. See Rickman v. State, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997); see also State v. White, 635 S.W.2d 396, 397-98 (Tenn. 1982) (rejecting an argument presented by the State for the first time on appeal). We conclude therefore that the State may not properly assert the issue of waiver for the first time in this Court.

We now proceed to the central issue in this case – whether the jury's verdict was tainted due to improper influence during deliberations. The parties do not dispute that the court officer made an improper statement to the jury. The dispute centers around how the post-conviction court arrived at its conclusion that the statement did not affect the verdict. The petitioner argues that allowing the State to cross-examine the juror regarding the effect of the court officer's statement impermissibly delved into the juror's internal thought processes and motivations during deliberations, thus violating Tennessee Rule of Evidence 606(b). Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's

mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

In State v. Blackwell, 664 S.W.2d 686 (Tenn. 1984), this Court adopted Federal Rule of Evidence 606(b), now embodied as Tennessee Rule of Evidence 606(b),[1] as "the rule governing the exclusion and admissibility of evidence to impeach a jury verdict in this State." Id. at 688; see also State v. Parchman, 973 S.W.2d 607, 612 (Tenn. Crim. App. 1997). We recognized in Blackwell that Rule 606(b) was essentially a codification of established Tennessee law in this respect. Blackwell, 664 S.W.2d at 688. Rule 606(b) is "grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." Tanner v. United States, 483 U.S. 107, 121 (1987). The rule promotes full and frank discussion in the privacy of the jury room and protects jurors from harassment by the losing party who might seek to impeach the verdict. Id. at 108. Thus, the overarching purpose of both the federal and Tennessee Rule 606(b) is to protect the integrity of the jury's deliberative process. See id. at 119-20; see also Caldararo v. Vanderbilt Univ., 794 S.W.2d 738, 741 (Tenn. Ct. App. 1990).[2]

To this end, a juror is not permitted to testify about anything occurring during deliberations, including the juror's own internal thoughts, motivations, or emotions. Tenn. R. Evid. 606(b); Blackwell, 664 S.W.2d at 688. The rule does, however, make an exception in three circumstances, allowing juror testimony if there has been: (1) extraneous prejudicial information, (2) outside influence, or (3) an antecedent agreement to be bound by a quotient or majority result. Tenn. R. Evid. 606(b); Cavalier Metal Corp. v. Johnson Metal Controls, 124 S.W.3d 122, 127 (Tenn. Ct. App. 2003). Further, when it has been shown that a juror was exposed to extraneous prejudicial

---

[1] Federal Rule of Evidence 606(b) and the current Tennessee Rule of Evidence 606(b) differ only in one respect. The Tennessee rule contains the additional exception allowing for juror testimony in a case where "the jurors agreed in advance to be bound by a gambling or quotient verdict."

[2] The Caldararo court expounded on the purpose of the rule as follows:

[Rule 606(b)] represents a compromise between important public policies. It enables the courts to protect the litigants from verdicts tainted by extraneous prejudicial information or outside influence. At the same time, it recognizes the importance of the inviolate nature of a jury's deliberations. . . . The rule precludes inquiries into the jury's deliberative process while allowing juror testimony concerning objective incidents or events that constitute external or extraneous influences on the jury. . . . Thus, it insures that jurors will not be guarded in their deliberations for fear of later scrutiny by others. It also prevents jurors whose views are in the minority from manipulating the system by repudiating the verdict and thereby requiring a new trial.

Id. at 741-42 (citations omitted).

information or subjected to improper influence, a rebuttable presumption of prejudice arises, and the burden shifts to the State to explain the conduct or demonstrate that it was harmless. Blackwell, 664 S.W.2d at 689; Parchman, 973 S.W.2d at 612.

Although adopted in 1984, the scope of inquiry permitted under Rule 606(b) remains an unsettled issue in this state. In some instances the rule has been interpreted as permitting juror testimony only as to the existence of extraneous information or outside influence and not to the subjective effect of that information or influence on the juror's deliberative process. See Carruthers v. State, 145 S.W.3d 85, 95-96 (Tenn. Crim. App. 2003); Montgomery v. State, 556 S.W.2d 559, 561 (Tenn. Crim. App. 1977). In other cases, courts have permitted juror testimony not only to establish the fact of extraneous information or outside influence, but also as to the effect of that information or influence on the juror's mental processes. See Cavalier Metal Corp., 124 S.W.3d at 130; Parchman, 973 S.W.2d at 614.

For instance, in Parchman, the defendant was convicted of two counts of sale of cocaine. 973 S.W.2d at 610. It was later discovered that during the jury's deliberations a bailiff had made an improper communication to the jury. The jury had been at an impasse regarding one of the charges, and one of the jurors decided to inform the court. However, rather than speaking with the judge, the juror spoke with a bailiff who informed the juror they would be required to deliberate until a verdict was reached. The jury then voted unanimously to find the defendant guilty. When called later to testify about the conversation, the bailiff stated that the juror had asked whether they could "find her guilty on one charge and not guilty on the other?" The bailiff testified that his only response was, "Yes." The court found that regardless of what the bailiff actually said, the jurors believed that the bailiff's statement had been that a verdict was required. Id. at 613. This extraneous information raised a presumption of prejudice and shifted the burden to the State to show the information was harmless in order to sustain the verdict. Id. By presenting only the testimony of the bailiff, the court concluded that the State had failed to sufficiently rebut this presumption, thus warranting a new trial. Id. at 614.

Then, in dicta, the Parchman court offered that to rebut the presumption of prejudice, "[i]t would have been possible to call the jurors to testify whether they were influenced by the statement." Id. However, we conclude that the intermediate court's interpretation of Rule 606(b) in Parchman conflicts with that of the majority of other courts having addressed the issue. The predominant view among other jurisdictions is that juror testimony regarding the subjective effect of extraneous information or outside influence on the juror's internal thoughts or deliberative processes is not permitted. See, e. g., Larson v. State, 79 P.3d 650, 654 (Alaska Ct. App. 2003); Lewis v. Pearson, 556 S.W.2d 661, 663-64 (Ark. 1977); Wiser v. People, 732 P.2d 1139, 1142 (Colo. 1987); Flonnory v. State, 778 A.2d 1044, 1053-54 (Del. 2001); People v. Hobley, 696 N.E.2d 313, 339 (Ill. 1998); Griffin v. State, 754 N.E.2d 899, 902 (Ind. 2001); Lund v. McEnerney, 495 N.W.2d 730, 733-34 (Iowa 1993); State v. Wisham, 384 So. 2d 385, 387 (La. 1980); State v. Cox, 322 N.W.2d 555, 559 (Minn. 1982); State v. Mann, 39 P.3d 124, 129 (N.M. 2002); State v. Lyles, 380 S.E.2d 390, 394 (N.C. Ct. App. 1989); State v. Crowell, 594 P.2d 905, 907 (Wash. 1979). This is also the law in virtually every federal circuit to have addressed the issue. See United States v. Gonzales, 227 F.3d

520, 525 (6th Cir. 2000); Mahoney v. Vondergritt, 938 F.2d 1490, 1492 (1st Cir. 1991); United States v. Ortiz, 942 F.2d 903, 909 (5th Cir. 1991); Haugh v. Jones & Laughlin Steel Corp., 949 F.2d 914, 917-18 (7th Cir. 1991); United States v. Maree, 934 F.2d 196, 201 (9th Cir. 1991); Capps v. Sullivan, 921 F.2d 260, 263 (10th Cir. 1990); United States v. Small, 891 F.2d 53, 56 (3rd Cir. 1989); Stockton v. Virginia, 852 F.2d 740, 744 (4th Cir. 1988); United States v. Sjeklocha, 843 F.2d 485, 488 (11th Cir. 1988); United States v. Moon, 718 F.2d 1210, 1235 (2nd Cir. 1983).

A good analysis of the issue is found in Haugh v. Jones & Laughlin Steel Corp., 949 F.2d 914 (7th Cir. 1991), which involved a trial in federal district court.[3] After the jury rendered its verdict and was discharged, the jury foreman informed the judge that a marshal who had overseen the jury during deliberations had told its members that there was no such thing as a hung jury. Id. at 915. The judge held a hearing on the matter, questioning the marshal and each of the jurors to determine if the statement had actually been made. The marshal testified that he had been asked by a juror how long they would have to stay in the courthouse if a verdict could not be reached, to which he had replied, "[y]ou just have to keep deliberating." Id. at 916. Then, in questioning the jurors, the trial court judge inquired not only whether each of the jurors had heard the marshal's remark, but also how the remark had influenced each juror. The judge posed questions such as, "[F]or what reason did you [render this verdict], because you believed in the verdict or because you wanted to go home?" Id. at 918. Concluding that there was a reasonable possibility that the statement had influenced the verdict, the court ordered a new trial.

Upon review, the Seventh Circuit Court of Appeals held that the judge's questions concerning the effect of the marshal's statement on the jurors had been improper. Id. The Court of Appeals held that Rule 606(b) prohibited the questioning of jurors regarding the impact of extraneous information or outside influence on their deliberations. Id. According to the court, the proper procedure under Rule 606(b) is

> for the judge to limit the questions asked the jurors to whether the communication was made and what it contained, and then, having determined that the communication took place and what exactly was said, to determine--without asking the jurors anything further and emphatically without asking them what role the communication played in their thoughts or discussion--whether there is a reasonable possibility that the communication altered their verdict.

Id. at 917.

We agree with the foregoing interpretation of Rule 606(b). We also note that this view is not a recent development in the law. It was, in fact, held more than a century ago that a juror "may testify to any facts bearing upon the question of the existence of any extraneous influence, although

---

[3] Although the court in Haugh was interpreting Federal Rule of Evidence 606(b), rather than the Tennessee rule, the federal court's interpretation provides helpful guidance to our own analysis because the two rules are virtually identical. See Caldararo, 794 S.W.2d 741 at n.3; Cont'l Cas. Co. v. Smith, 720 S.W.2d 48, 49 (Tenn. 1986).

not as to how far that influence operated upon his mind." <u>Mattox v. United States</u>, 146 U.S. 140, 149 (1892). As noted, federal courts generally continue to follow the <u>Mattox</u> rule. <u>See</u> 2 <u>Federal Rules of Evidence Manual</u> 905 (7th ed. 1998).

We conclude that this approach is in keeping with the goals of Rule 606(b) to protect the integrity of the deliberative process, encourage frank and open discussion among the jurors, and promote finality of jury verdicts. Prohibiting inquiry into the jurors' thought processes and motivations during deliberations also secures the proper relationship of the jury to the judge and the law. The right to a trial in which a jury serves as the ultimate finder of fact and arbiter of guilt or innocence "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." <u>Blakely v. Washington</u>, 124 S.Ct. 2531, 2538-39 (2004).

For the foregoing reasons, we hold that Tennessee Rule of Evidence 606(b) permits juror testimony to establish the fact of extraneous information or improper influence on the juror; however, juror testimony concerning the effect of such information or influence on the juror's deliberative processes is inadmissible. In the case now before us, we conclude that it was error for the post-conviction court to consider the juror's testimony regarding the effect of the court officer's statement on her decision making process. The juror's testimony that the statement had been made was properly considered and raised a presumption of prejudice to the petitioner. The only evidence presented by the State to rebut this presumption was the inadmissible cross-examination testimony of this juror. The State could have called the court officer to testify as to whether he actually made the statement, or the other members of the jury could have been asked whether they heard the statement. However, as no other proof was presented on this issue at the hearing, we conclude that the State failed to sufficiently rebut the presumption of prejudice to the petitioner. Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand this case for a new trial.

Before concluding this issue, some additional discussion is in order. In reviewing the facts of this case, we see no ill intent by the court officer in making the statement to the jury. It was apparently no more than an "off the cuff" remark given during a short exchange with a juror, without any thought of its possible effect on the jury. We realize that a court officer's job places him or her in a position where some informal conversation with jurors is inevitable. Therefore, we take this opportunity to strongly caution officers against making any potentially prejudicial remarks to jurors. In doing so, we do not intend to discourage cordial relations between court officers and jurors. Jury service is "'the highest obligation of citizenship [and] should be an interesting and rewarding experience to be looked back on with interest and pleasant recollection by those who are privileged to be selected.'" <u>Carruthers</u>, 145 S.W.3d at 93 (quoting <u>State v. Pennell</u>, 583 A.2d 1348, 1353 (Del. 1990)). To that end, the court officer's role is vital. But at the same time, these officers must carefully guard against making any statements of law or prejudicial comments to jurors. Court officers act as representatives of the court, and they must recognize the official character of their position will cause their comments to carry great weight in the eyes of the jury. Thus, we again stress the importance of closely guarding all comments made in the presence of jurors.

## Conclusion

To summarize, we hold that Tennessee Rule of Evidence 606(b) does not permit juror testimony as to the effect of any extraneous information or improper influence on the juror's deliberations. Therefore, the post-conviction court erred in admitting juror testimony in this regard during the petitioner's post-conviction hearing. The court officer's improper statement to the jury created a presumption of prejudice which the State failed to overcome. Accordingly, the judgment of the Court of Criminal Appeals is reversed, and the case remanded for a new trial.

Costs of this appeal are taxed to the State of Tennessee.

_____
WILLIAM M. BARKER, JUSTICE