IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2004 Session
Remanded by Supreme Court August 22, 2005

**STATE OF TENNESSEE v. MALINDA L. MASON**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-T-348     Frank G. Clement, Jr., Judge**

_____

**No. M2005-01961-CCA-RM-CD - Filed November 10, 2005**

_____

Defendant, Malinda L. Mason, was indicted for driving under the influence of an intoxicant and for violation of the implied consent law. Following a jury trial, Defendant was convicted of driving under the influence, fifth offense, and sentenced to twenty-one months in the county workhouse as a Range I, standard offender. Defendant's sole issue on appeal challenges the trial court's denial of her request for a mistrial. When this case was originally before this court, we affirmed the judgment of the trial court. Subsequently, Defendant filed an application for permission to appeal to the supreme court. On August 22, 2005, the supreme court granted the application and remanded to this Court for reconsideration in light of *Walsh v. State*, 166 S.W.3d 641 (Tenn. 2005). After reviewing this case in light of *Walsh*, we reverse the conviction and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Reversed, and Case Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Peter D. Heil, Nashville, Tennessee, (on appeal); and Thomas Overton, Nashville, Tennessee, (at trial), for the appellant, Malinda L. Mason.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Jennifer Tackett, Assistant District Attorney General; and Kristen Shea, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

Because Defendant does not challenge the sufficiency of the convicting evidence, we will only briefly outline the evidence supporting her conviction. Officer Richard Foley with the Metro Nashville Police Department was on routine patrol on the night of April 5, 2002, when he noticed

Defendant's car make a sharp left turn in front of him shortly after midnight. Officer Foley followed Defendant for approximately a mile. During this time, Defendant's car crossed the white line into the left lane twice. Defendant's car at one point also swerved from the middle lane into the right turn lane and back again into the middle lane. Officer Foley initiated a stop, and Defendant pulled into a parking lot. Officer Foley said Defendant's eyes were watery, her speech was slurred, and he detected an obvious odor of alcohol on her breath. Defendant experienced difficulty in retrieving her driver's license. When she exited her car, Defendant fell back, and then fell again when she walked toward the patrol car. Officer Foley called for another officer to provide back-up.

Defendant repeatedly refused to take the field sobriety tests. Officer Foley explained the implied consent law to Defendant and warned her that if she also refused to take a blood alcohol test, her driver's license could be suspended. Defendant continued to refuse to submit to either the field sobriety tests, a blood alcohol test or a breathalyzer test. Defendant told Officer Foley that she had only had five hours of sleep within the past twenty-four hours. Defendant said that she had been to a restaurant that night, but she denied that she had consumed any alcohol.

Officer James Davis, Jr. responded to the request for back-up. Officer Davis said that Defendant was agitated during the stop, her speech was slurred, and there was an odor of alcohol about her.

A few minutes after the jury began deliberations, the trial court discovered that the court clerk had inadvertently given the jury a copy of count two of the indictment charging Defendant with violation of the implied consent law. Defendant moved for a mistrial, and the trial court responded,

> I don't blame you for asking for it, but out of respect for you and the jury and the State, I'm going to decline to rule upon it now. I think it is important to find out if any juror saw it. Then if they did, did it affect their judgment or what have you? But I will do that after the jury comes back in.

Defendant asked the trial court to voir dire the jurors individually about the extraneous information. After the jury returned a guilty verdict, the trial court posed three general questions to each juror: whether they saw count two of the indictment; what they understood count two to mean; and whether seeing count two influenced their decision.

Seven jurors reported that they saw count two of the indictment. Four jurors said they did not see count two of the indictment. One juror could not remember whether he had seen count two of the indictment. Six of the jurors who read count two of the indictment said that they did not think that Defendant was charged with another offense, and considered Defendant's failure to take a blood alcohol test to be part of the DUI offense. One juror said that she understood count two of the indictment to mean that Defendant would lose her license if she were found guilty, and that this had "somewhat" of an influence on her decision. The juror later said, however, that her vote of guilty was based on the evidence presented at trial, and that she had general knowledge of the consequences

of refusing to take a blood alcohol test. All twelve jurors confirmed that they would have voted to convict even if count two had not been shown to the jury.

Teresa Covington, the court officer in charge of supervising the jury, testified that only about two or three minutes elapsed between the time the jury retired for deliberations and when she retrieved the copies of count two of Defendant's indictment. None of the jurors asked her why she was removing the copies, and Ms. Covington said she did not have any conversation with the jury members about count two.

Both parties agree that it was improper to show the jury count two of Defendant's indictment charging her with violation of the implied consent law. Any person who drives a motor vehicle in Tennessee is "deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood . . . ." Tenn. Code Ann. § 55-10-406(a)(1). If a person refuses to submit to a blood alcohol test after being informed of the consequences of failing to do so, the person may be charged with violating the implied consent law. *Id*. § 55-10-406(a)(3). Violation of the implied consent law, however, is not a criminal offense, and a violator must "be charged by a separate warrant or citation that does not include any charge of violating § 55-10-401 that may arise from the same occurrence." *Id*.

Defendant argues, however, that the trial court exceeded the scope of inquiry permitted under Rule 606(b) of the Tennessee Rules of Evidence when it asked the individual jurors if count two had any impact on their decision as to Defendant's guilt. The State argues in its brief that the trial court's questions were necessary to satisfy the State's burden that the extraneous information was not prejudicial.

Rule 606(b) provides that:

[u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Tenn. R. Evid. 606(b).

Count 2 of the indictment, which was erroneously sent into the jury room during deliberations and was seen by seven members of the jury, states as follows:

## COUNT 2

THE GRAND JURORS of Davidson County, Tennessee, duly impaneled and sworn, upon their oath, present that:

## MALINDA L. MASON

on or about the **5th** day of **April, 2002**, in Davidson County, Tennessee and before the finding of this indictment, did refuse a test for the purpose of determining the alcoholic or drug content of **Malinda L. Mason's** breath at the request of **Officer Richard Foley III**, an Officer of the **Metropolitan Police Department**, the said **Officer Richard Foley III** having first advised **Malinda L. Mason** that refusal to submit to such test would be in violation of Tennessee Code Annotated § 55-10-406 and against the peace and dignity of the State of Tennessee.

/s/ Victor S. Johnson
VICTOR S. JOHNSON III
DISTRICT ATTORNEY GENERAL
TWENTIETH JUDICIAL DISTRICT

There is no doubt that Count 2 of the indictment was extraneous, prejudicial information brought to the jury's attention. In *Walsh*, our supreme court reiterated the well-settled law that, "when it has been shown that a juror was exposed to extraneous prejudicial information or subjected to improper influence, a rebuttable presumption of prejudice arises, and the burden shifts to the State to explain the conduct or demonstrate that it was harmless." *Walsh*, 166 S.W.3d at 647 (citations omitted).

Further, regarding the question of whether or not juror testimony can be elicited by the State to rebut the presumption of prejudice, the supreme court held that such testimony is not admissible, stating that "we hold that Tennessee Rule of Evidence 606(b) permits juror testimony to establish the fact of extraneous information or improper influence on the juror; however, **juror testimony concerning the effect of such information or influence on the juror's deliberative processes is inadmissible**." *Id*. at 649 (emphasis added).

Pursuant to *Walsh*, we must totally disregard the testimony of the jurors regarding the effect of count 2 on their deliberative process. Without that testimony, there was no proof submitted by the State to rebut the presumption of prejudice. *See Walsh* at 649. Nevertheless, the State argues that the error was harmless because virtually all of the information contained in count 2 was testified to by Sergeant Foley during the trial. Sergeant Foley testified that he read the implied consent law to Defendant and explained the implications to her. He asked her to submit to a blood or breath alcohol test and she refused to do so. Sergeant Foley further testified that he normally warns a person arrested for DUI that if they refuse to take the blood or breath alcohol test that his or her

license can be suspended.  In addition, the State argues that there was no prejudice to Defendant because the trial court included in the jury instructions, the following:

> If you find from the proof that the defendant was offered and refused to submit to a test for the purpose of determining the alcohol or drug content in her blood and that the officer advised the defendant that refusal to submit to such a test will result in suspension of her operator's license, then such refusal is not sufficient by itself to establish the guilt of the defendant, but it is a fact which, if proven, may be considered by you in the light of all other proven facts in deciding whether the defendant is guilty or not guilty.  The weight to which such is entitled and whether or not such conduct shows a consciousness of guilt are matters for your determination.

This portion of the trial court's charge to the jury does not rebut the presumption of prejudice or otherwise make the error harmless.  If anything, count 2 became, in effect, improper additional evidence of facts testified to by Sergeant Foley.  These were the facts that the jury was told could be used to determine Defendant's guilt.

If the only possible prejudice to Defendant could come from the jury having knowledge of the information contained in count 2, then the State's argument might be with merit.  However, in this case, we conclude that the information contained in count 2 is actually extremely prejudicial because it is essentially a written summary of a portion of the testimony of the primary prosecution witness, which is endorsed by the district attorney general, and presented in a form that implicitly indicates the approval of the Grand Jury of Davidson County as to the facts alleged therein.  It would be hard to conclude under any scenario that a written summary of any prosecution witness's testimony, not made an exhibit, and presented to a jury during deliberations, would not be prejudicial.

There is no evidence in the record to rebut the presumption of prejudice.  Accordingly, the conviction must be reversed and this case is remanded for a new trial.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and remand this case for a new trial.

_____
THOMAS T. WOODALL, JUDGE