IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 1, 2009

## TERRANCE D. NICHOLS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-07321     John T. Fowlkes, Jr.,Judge**

---

**No. W2009-00590-CCA-R3-PC - Filed February 25, 2010**

---

The petitioner, Terrance D. Nichols, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief. The petitioner is currently serving a sentence of life with parole following his conviction for first degree murder. On appeal, he raises the single issue of whether the post-conviction court erred in concluding that he received the effective assistance of counsel. The State argues that the petition for post-conviction relief was untimely and, despite being heard and ruled upon by the post-conviction court, asserts this court lacks jurisdiction to entertain review. We agree that the record supports this argument; therefore, the appeal must be dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

R. Andrew Hutchinson and Matthew S. Lyons, Memphis, Tennessee, for the appellant, Terrance D. Nichols.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Theresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background

The underlying facts of the case, as stated on direct appeal, are as follows:

The instant case arises from the shooting death of the victim, Tom

Wilson. Viewed in the light most favorable to the State, the evidence adduced at trial revealed that the victim and his brother, Larry Wilson, were self-employed mechanics who repaired vehicles in the parking lot of the AutoZone on Raines Road in Memphis. On May 18, 2002, in "the early part of the morning," the eighteen-year-old [petitioner] brought his Buick Century to AutoZone for repairs. The victim worked on the [petitioner]'s vehicle, replacing the harmonic balancer. The [petitioner] had purchased the harmonic balancer; however, the part was the wrong shape and did not fit properly. When the victim attempted to remove the harmonic balancer, it broke. Thereafter, the [petitioner] and the victim became "involved in a discussion" about who was going to pay for a new harmonic balancer. According to witnesses, the men did not argue, shout, use profanity, or lose their tempers. However, Gwendolyn Clemons, who was also having her vehicle repaired that day, testified at trial that the [petitioner] commented that if the victim did not fix his vehicle, "he was going to kill him."

Following the discussion, the [petitioner] walked to the rear of his vehicle and returned with a rifle. The victim raised his arms and said, "[W]ait, whoa, don't shoot me over your car." The [petitioner] then attempted to shoot the victim, but the rifle jammed. Fumbling with the rifle, the [petitioner] told the victim, "[Y]ou better hope this motherf***er don't shoot." Eventually, the [petitioner] was able to get the gun to fire, and he shot the victim five or six times. The victim fell onto the hood of a nearby vehicle and slid to the ground. As the victim lay on the ground, the [petitioner] shot the victim several more times. When the [petitioner] had emptied the rifle of bullets, he said, "I told you." The [petitioner] then returned to the rear of his vehicle, placed the rifle in the trunk, and walked "briskly" around the corner, leaving his vehicle in the parking lot. According to witnesses, the [petitioner] shot the unarmed victim approximately nine times. After the shooting, a security guard at AutoZone telephoned 911. Within minutes, police and paramedics arrived, and the victim was pronounced dead at the scene.

*State v. Terrance D. Nichols*, No. W2003-01043-CCA-R3-CD (Tenn. Crim. App. at Jackson, Mar. 8, 2005). After ascertaining the petitioner's identity through his registration, police searched his home but were unable to locate him. *Id*. At approximately 11:30 p.m. on the night of the shooting, the petitioner voluntarily came to the police station and subsequently gave a statement admitting his involvement in the shooting, although asserting that the victim had been attacking him. *Id*. Subsequent testimony at trial indicated that the victim had died of multiple gunshot wounds, which he received from a distance of at least two feet. *Id*. Based upon these actions, the petitioner was indicted for first degree murder and later found

guilty as charged and sentenced to life with parole. *Id.* A panel of this court affirmed the conviction in a March 8, 2005 opinion. *Id.* The Tennessee Supreme Court denied permission to appeal on June 20, 2005.

On May 7, 2007, the petitioner filed a *pro se* petition for post-conviction relief, which was amended following the appointment of counsel, asserting that he was denied his right to the effective assistance of counsel. A hearing was later held at which the petitioner, Carl Snipes, the petitioner's mother, trial counsel, and appellate counsel testified.

The petitioner testified that trial counsel was retained to represent him following the petitioner's arrest for this crime. According to the petitioner, trial counsel visited him only twice at the jail and for short periods of time prior to court appearances. Additionally, he testified that trial counsel did not discuss any type of defense with him or explain the strategy of the case. The petitioner also contended that trial counsel failed to interview a suggested witness, Carl Snipes. He testified that he did not believe that trial counsel was prepared for trial and that he failed to investigate the crime scene and photos of the crime scene which showed a knife. However, the petitioner acknowledged that trial counsel did question the criminal response team at trial regarding why the knife was not collected. He also acknowledged that he made no mention of the victim possessing a knife in his statement to police, although he now contends that the victim was armed.

The petitioner testified that it was initially decided that he would testify and tell his version of events to the jury, as he was the only eyewitness available for the defense. During opening statements, trial counsel alluded to the fact that the jury would hear directly from the petitioner. The petitioner was voir dired and stated to the trial court his intention to testify. However, following a short break, the petitioner changed his mind. According to the petitioner, he did so because trial counsel advised both him and his family that it was not necessary as they had already won the case and because the State would "eat" him "alive."

The petitioner testified that trial counsel was appointed to handle the appeal following the petitioner's conviction, but he later disappeared and his letters were returned undeliverable. The petitioner learned from the appellate court clerk that he needed to have new counsel appointed, which was done. The petitioner stated that he never met appellate counsel or discussed possible issues for review. According to the petitioner, he received only one letter from appellate counsel and a copy of the brief after it was filed.

On cross-examination, the petitioner acknowledged that trial counsel cross-examined the State's witnesses at length and also called three defense witnesses and one of the investigating officers. While he claimed that trial counsel should have objected to remarks made by the State during closing argument, he acknowledged that the issue had been

determined on direct appeal. He further acknowledged that he had no mental issue but still insisted that trial counsel should have requested a mental evaluation, as all parties charged with first degree murder were entitled to one.

Carl Snipes, a friend of the petitioner's grandmother, also testified. He stated that he had been "ripped off" by the victim and that they also argued after the victim tried to charge him without repairing his vehicle. Mr. Snipes stated that he spoke with the victim's brother about the incident after the victim started "talking all crazy." He further testified that he was contacted by trial counsel but did not testify at trial.

The petitioner's mother, Ms. Bernice McCall, testified regarding a discussion she had with trial counsel about whether the petitioner should testify. According to Mrs. McCall, during a brief recess during trial, counsel explained that he did not think it was a good idea for the petitioner to testify. She stated that the petitioner relied upon that advice in making his decision not to take the stand.

Trial counsel was next to testify and stated that met with the petitioner two or three times in jail and numerous times at court appearances. He asserted that he had discussed possible theories of defense and possible witnesses with the petitioner. According to trial counsel, because of the amount of evidence against the petitioner, including his own statement, the only theory of defense to effectively pursue was to seek a reduced charge. He denied that the petitioner informed him that the victim had been in possession of a knife, although the petitioner did assert that the victim was "coming at him" and "being loud."

Trial counsel testified that the petitioner suggested three witnesses be called for the defense and that two of those witnesses were called. The third, Mr. Snipes, was contacted by trial counsel, but he felt that the incident was not useful to the defense. From the outset of the case, trial counsel and the petitioner agreed that he should testify. Trial counsel stated that he never informed the petitioner he did not need to testify and that it was the petitioner's decision, alone, not to do so. With regard to the petitioner's claim that he needed a mental evaluation, trial counsel testified that he did not believe the petitioner had any mental health issues which might justify such an evaluation. Trial counsel went on to state that he did visit the crime scene, although it was later as he was not retained until "some period of time after" the petitioner's arrest.

Trial counsel acknowledged that he did "disappear" during the petitioner's direct appeal. He stated that he stopped practicing law "some time" after the petitioner's trial and agreed with the Board of Professional Responsibility to a one-year-long suspension.

Appellate counsel was the final witness to testify. He acknowledged that he never met

with the petitioner to discuss possible appellate issues. However, in contrast to the petitioner's testimony, appellate counsel stated that five letters were sent to the petitioner. Moreover, he testified that he reviewed the record thoroughly and believed that all viable issues were presented.

After hearing the evidence presented, the post-conviction court, by written order, concluded that trial counsel had not rendered deficient performance nor had prejudice resulted. The petitioner timely appealed that decision.

**Analysis**

On appeal, the petitioner raises the single issue of ineffective assistance of counsel. Though somewhat unclear, as the petitioner's argument is that trial counsel failed to meet the standard required under *Baxter v. Rose* generally, we glean from a thorough reading of the brief that he appears to assert that trial counsel was ineffective for: (1) failing to sufficiently confer with the petitioner to ascertain potential defenses; (2) failing to request a mental evaluation; (3) failing to adequately investigate; and (4) stating in opening statements that the petitioner would testify when he did not do so.

As an initial matter, the State asserts that the appeal should be dismissed because the post-conviction petition was untimely, thereby denying this court of jurisdiction to review. Preliminarily, we note that the State did not raise the statute of limitations issue in the post-conviction court but, instead, raises it for the first time in this court. "Generally, an appellate court will not allow a party to raise an issue for the first time on appeal because such action denies the adversary opportunity to rebut the issue with evidence and argument." *Nathaniel Morton Champion v. State*, No. M2008-01821-CCA-R3-PC (Tenn. Crim. App. at Nashville, Oct. 20, 2009) (*citing Walsh v. State*, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal."); *State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994) ("[A] party will not be permitted to assert an issue for the first time in the appellate court.")); *see also* T.C.A. § 40-30-110(f) (2006) ("There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived."). "Although the [S]tate did not address the issue in the court below, the language of the post-conviction statute confers jurisdictional import to the timely filing of a petition, and this court must resolve the question of timeliness before any adjudication on the merits may properly occur." *Id.* (*citing Antonio L. Saulsberry v. State*, No. W2002-02538-CCA-R3-PC (Tenn. Crim. App. at Jackson, Feb. 9, 2004), *perm app. denied* (Tenn. 2004) (citations omitted)). "Moreover, the statute of limitations for filing a post-conviction petition is not an affirmative defense which the State must assert." *Id.* (citing *State v. Nix*, 40 S.W.3d 459, 464 (Tenn. 2001).

Under the Post-Conviction Procedure Act, a petitioner seeking post-conviction relief must do so within one year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, from the date on which the judgment became final. T.C.A. § 40-30-102(a) (2006). "The statute of limitations shall not be tolled for any reason, including any tolling or saving provisions otherwise available at law or equity." *Id*. In order to qualify for the limited statutory exceptions to the statute of limitations, the petition must be based upon a new rule of constitutional law requiring retroactive application, must be based upon new scientific evidence establishing actual innocence, or must assert relief from sentences which were enhanced because of a previous conviction that has subsequently been found to be illegal. *Id*. at (b). A court may also consider an untimely petition if applying the statute of limitations would deny the petitioner due process. *Burford v. State*, 845 S.W.2d 204, 209-10 (Tenn. 1992).

Despite the post-conviction court's characterization of the petition as timely, the record clearly reveals that not to be the case. The petitioner filed his petition on May 7, 2007, clearly more than one year after the June 20, 2005 denial of permission to appeal. Moreover, none of the statutory exceptions are applicable on these facts. In his petition, the petitioner acknowledges that the petition was filed outside the one-year time but states:

> Because I had obtained a lawyer to file a post-conviction on my behalf, since, that lawyer has been disbarred. Furthermore the Clerk of the Court informed me that because of the problems I had . . . with my attorney, the Court was allowing me to go ahead and file a Petition for Post-Conviction Relief at this time.

However, nothing in the record before us, such as an order from the court, supports this assertion. It is the petitioner's burden to supply a complete and accurate record on appeal. Tenn. R. App. P. 24(b). Moreover, nothing in this record indicates that the defendant's post-conviction counsel was ever disbarred. While evidence was presented with regard to trial counsel being suspended from the practice of law, clearly, trial counsel is not handling the petitioner's petition for post-conviction relief, as he has not sought reinstatement of his license. The attorney of record in the instant post-conviction proceeding was not appointed until June 28, 2007. Thus, the petitioner has simply failed to establish any reason the statute of limitations should have been tolled. No facts in the record indicate that the court should toll the statute of limitations for due process considerations as nothing suggests that the petitioner did not have "the reasonable opportunity to assert a claim in a meaningful time and manner." *See Seals v. State*, 23 S.W.3d 272, 279 (Tenn. 2000).

Despite the State's failure to previously raise this issue, we are required to dismiss an appeal if the trial court did not have jurisdiction to consider the petition because it was

untimely and due process considerations do not require tolling of the statute of limitations. *See Nathaniel Morton Champion*, No. M2008-01821-CCA-R3-PC. Such is the instant case as the petitioner filed his claim for post-conviction relief outside the one-year statute of limitations, and no exceptions apply that would toll that statute of limitations. Accordingly, neither the post-conviction court nor this court have jurisdiction to consider the petition for post-conviction relief. Thus, the appeal must be dismissed.

## CONCLUSION

Based upon the foregoing, the appeal is dismissed.

_____
JOHN EVERETT WILLIAMS, JUDGE