IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 1, 2019 Session

## ED LOYDE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 12-00603        J. Robert Carter, Jr., Judge[1]**

_____

### No. W2018-01740-CCA-R3-PC
_____

The Petitioner, Ed Loyde, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions of rape of a child and aggravated sexual battery and resulting effective sentence of thirty-five years in confinement. On appeal, the Petitioner contends that the post-conviction court erred by denying his petition because he received the ineffective assistance of counsel at trial. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Josie S. Holland (on appeal) and Daniel Lenager (at hearing), Memphis, Tennessee, for the appellant, Ed Loyde.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The Petitioner was a friend of the victim's mother. State v. Ed Loyde, No. W2014-01055-CCA-R3-CD, 2015 WL 1598121, at *1 (Tenn. Crim. App. at Jackson, Apr. 6, 2015). In September 2010, he was evicted from his residence and went to live

---

[1] Judge Carter did not preside over the Petitioner's trial.

with the eight-year-old victim and her family in her grandmother's home for about six months. Id. In February 2012, the Shelby County Grand Jury indicted him for rape of a child and aggravated sexual battery.

The Petitioner was tried in February 2014. During his four-day trial, the victim, her brother, her grandmother, two police officers, a forensic interviewer, and a pediatrician testified for the State. The Petitioner did not present any proof, and the jury convicted him as charged in the indictment. On direct appeal of his convictions, this court gave the following factual account of some of the testimony presented at trial:

> [The victim] said that the abuse occurred in [her grandmother's] living room where the defendant touched her breast and penetrated her vagina with his penis. The victim was in her home with her two brothers and the defendant. Her grandmother was also at the home and was asleep in her room. The defendant instructed the victim's brothers to go outside and play, and he locked the door once they exited the house. When the victim asked if she could go outside as well, the defendant told her she could not. The defendant removed the cushions from the couch, placed them on the floor, and asked the victim to help him to clean the couch. He then placed his hand under her shirt and bra and touched her breast for "two or three minutes." The defendant put the victim on her stomach on the pillows, and he told her to pull down her pants. The victim heard "a buckle of a belt" and "a zipper," and she felt the defendant on top of her and something "hard" between her legs. The defendant penetrated her vagina with his penis, and his body "was going up and down." She felt his penis inside of her vagina. The victim estimated that the defendant was on top of her for "for fifteen to twenty minutes."
>
> The defendant stopped penetrating the victim when he heard the victim's stepfather at the door. The defendant started "trying to sweep out the stuff on the couch," and the victim went to her bedroom. When she later went to the bathroom, she felt a "wetness" between her legs that had not been there before the defendant penetrated her. She testified that she was not bleeding after the incident.
>
> The victim could not recall the exact date of the incident, but she testified that it occurred in April, several weeks before her April 21st birthday. She told her older brother about the abuse, but she did not make a disclosure to anyone else until after the defendant had moved out of the residence. Her brother testified that the defendant continued to live with

- 2 -

the family for a month after the victim revealed the abuse, but he agreed that it could have been as long as nine weeks.

On cross-examination, the victim testified that she did not tell police officers that the defendant touched her vagina with his hand or that the incident took place on her bedroom floor and lasted for three or four minutes. She recalled telling [a forensic interviewer] that the incident occurred on the couch instead of on the floor. She remembered telling police officers and the forensic interviewer that the defendant told her to take off all of her clothes, and she agreed that she testified at trial that the defendant told her only to pull her pants down and that she did not take off all of her clothes.

Dr. Karen Lakin testified as an expert in pediatrics and child sexual assault. She testified that a sexual assault exam was performed on the victim. During the examination, the victim stated that the defendant "raped [her]." She said that the defendant "stuck his lower part in [her] private part" and touched her breast. Dr. Lakin testified that there were no abnormalities or evidence of injuries . . . found during the examination. She testified that in "ninety-five to ninety-eight percent" of pediatric sexual assault cases, there were no physical findings of assault. She explained that there were not often physical findings because children often did not disclose the assault immediately after it occurred. Dr. Lakin stated that an increased passage of time between the assault and the examination made it less likely that the examination would produce physical findings consistent with sexual assault. She testified that in cases where the examination occurred more than seventy-two hours after the assault, there was not an attempt to collect DNA evidence because the procedure would be ineffective. She also testified that the vaginal area was able to heal very quickly, meaning that there would be no evidence of an assault if the area were examined several weeks after the assault.

Id. at *2.

After a sentencing hearing, the trial court sentenced the Petitioner to consecutive sentences of twenty-five years for rape of a child, a Class A felony, and ten years for aggravated sexual battery, a Class B felony. On direct appeal of his convictions, the Petitioner argued that the evidence was insufficient to support the convictions because the State provided no forensic proof of the rape and because the victim's account of the crimes was "'sketchy.'" Id. at *3. This court found the evidence sufficient. Id. at *4.

- 3 -

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely pro se petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. The post-conviction court appointed counsel, and post-conviction counsel filed an amended petition. Relevant to this appeal, the Petitioner alleged in the amended petition that trial counsel was ineffective because he "failed to make numerous objections to improper testimony elicited by the State." The Petitioner then specified that trial counsel should have objected to (1) leading and compound questions, (2) questions that were outside the scope of cross-examination, and (3) questions that called for speculation by witnesses. The Petitioner did not quote any specific examples of improper testimony in the trial transcript but cited to pages 267, 309, and 331, respectively. Finally, the Petitioner alleged in the amended petition that trial counsel was "particularly ineffective" during Dr. Lakin's testimony because he allowed her to answer questions that were outside her area of expertise as a pediatrician.

Trial counsel was deceased at the time of the evidentiary hearing. The Petitioner testified that trial counsel was appointed to represent him and that they met only twice per month. They "mostly" talked about the Petitioner's accepting an eight-year plea offer from the State, and trial counsel was "really worried" the Petitioner "would get old and die in prison" if he did not accept the State's offer. The Petitioner asked trial counsel for discovery but never received it. The Petitioner also was supposed to watch a video of the victim's forensic interview but never did so.

The Petitioner testified that he wanted his brother and a man named Andrew Alexander to testify at trial. The Petitioner was in the hospital when the crimes allegedly occurred, and the Petitioner asked trial counsel to obtain his medical records from Delta Medical to prove his alibi. However, trial counsel did not get the records. Trial counsel told the Petitioner that he investigated the Petitioner's case, but trial counsel never mentioned that the State was planning to have an expert testify at trial. The Petitioner said he did not know if trial counsel knew about the State's expert.

The Petitioner testified that he and trial counsel were "in cahoots with one another" and that trial counsel did not want to represent him. At some point, the Petitioner told the trial court that trial counsel was not representing him as an attorney should represent a client and that trial counsel kept telling him that he was going to get old and die in prison. The trial court told the Petitioner, "[M]aybe so, listen to your attorney."

On cross-examination, the Petitioner testified that he had an alibi for the crimes because he was in the hospital "around April 16th" and stayed in the hospital about seventeen days due to his "mental capacity." In 2013, the trial court sent the Petitioner to a mental health hospital in Nashville because the Petitioner and trial counsel "had words

with one another." Although trial counsel told the Petitioner to consider the State's eight-year offer, the Petitioner rejected the offer because he did not commit the crimes.

The Petitioner testified that trial counsel said he tried to find Mr. Alexander. Trial counsel told the Petitioner that Mr. Alexander was deceased and showed the Petitioner a newspaper clipping of Mr. Alexander's obituary. The Petitioner acknowledged that trial counsel had the Petitioner's brother come to trial but that trial counsel did not call the Petitioner's brother as a witness.

On redirect examination, the Petitioner testified that he was expecting his brother to testify as an alibi witness and that trial counsel knew he wanted his brother to testify. Trial counsel told the Petitioner that he did not call the Petitioner's brother to the stand because "it would cause some indiscrepancies as far as the, far as the trial is concerned." Trial counsel did not explain to the Petitioner what he meant by "indiscrepancies."

At the conclusion of the hearing, post-conviction counsel advised the post-conviction court that he was going to subpoena the Petitioner's medical records from Delta Medical and requested to admit the records into evidence. The post-conviction court agreed and scheduled another hearing in order for post-conviction counsel to present additional proof. At the second hearing, post-conviction counsel informed the post-conviction court that he did not receive any relevant information from Delta Medical. Post-conviction counsel argued that trial counsel was ineffective, in pertinent part, "by failing to make a number of necessary objections, which allowed improper testimony to be admitted on the record" and resulted in prejudice to the Petitioner. Post-conviction counsel then argued as follows:

> Specifically as to his failure to make objections, it was so blatant, Your Honor, that there was several times that the Court itself had to stop either questioning or testimony because the Court found that a question was improper or perhaps outside the scope of the expert's testimony. I think it's pretty apparent on its face if a judge is stopping a question in the middle of a trial that something has gone wrong, if the defense attorney doesn't have the sense to make an objection. If it's close enough for the judge to call it, I think it's pretty blatant.

> Most of this -- some of the testimony came out was prejudicial in the form of the questioning that was inflammatory to the jury, that [trial counsel] stopped -- failed to object to. Some of it was simply the expert testifying outside her area of expertise, which was liable to confuse the jury or maybe make them believe something that wasn't necessarily the case. In either case [trial counsel] should have been all over it and he was not.

Subsequently, the post-conviction court filed a written order in which it denied the petition for post-conviction relief.

## II.  Analysis

The Petitioner contends that the post-conviction court erred by denying his petition because trial counsel was ineffective for failing to object to improper questions asked by the State during its redirect examination of the victim.  The Petitioner also asserts that trial counsel was ineffective for failing to object to Dr. Lakin's testimony.  The State argues that the Petitioner has waived these issues and that, in any event, he is not entitled to relief.  We conclude that the Petitioner is not entitled to relief.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-110(f).  "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'"  State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).  Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact.  See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997).  Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).  We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct.  See Fields, 40 S.W.3d at 458.  However, we will review the post-conviction court's conclusions of law purely de novo.  Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases."  Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

First, the Petitioner contends that trial counsel was ineffective during the State's redirect examination of the victim because trial counsel failed to object to the following line of questioning on page 309 of the trial transcript:

> Q. When [trial counsel was asking you on cross-examination] if you said "Stop" and how many times and how loud you got, did you ever think this would happen to you at eight years old?
>
> A. No, ma'am.
>
> Q. Did you even understand at all back then, when you were eight years old?
>
> A. No, ma'am.
>
> Q. When you went to church and listened to [the Petitioner] play keyboards were you thinking in your mind, one day this man is going to put his penis inside of me and I better be looking at a clock and screaming at the top of my lungs, so that I can tell people about it someday? Were you thinking like that back then?
>
> A. No, ma'am.
>
> Q. What I have asked you to do your best to be very sure about and which [you] seem to have been is that it happened in the month of April. And what I asked you is if it was before your birthday and you said it was before your birthday and still in the month of April; is that right?
>
> A. Yes, ma'am.

The State argues that the Petitioner has waived this issue because he raises it for the first time on appeal. However, the Petitioner alleged in his amended petition that trial counsel should have objected to improper testimony elicited by the State. He also alleged in the amended petition that trial counsel should have objected to redirect examination testimony that was outside the scope of cross-examination and cited to the victim's redirect examination testimony on page 309. At the evidentiary hearing, post-conviction counsel argued that trial counsel should have objected to questioning that was inflammatory and prejudicial, and he makes that same argument to this court, stating that the State's questions on page 309 were "designed to inflame the jury's passions." Therefore, we hold that the issue has not been waived.

In support of his contention that the State's questions warranted an objection, the Petitioner asserts that the trial court "chastised trial counsel for not objecting to this line of questioning." We disagree with the Petitioner. After the State concluded its redirect examination of the victim, trial counsel attempted to ask her if she remembered how many times the Petitioner's penis "may have gone in and come back out." The State objected, and the trial court sustained the objection. In a bench conference, trial counsel advised the trial court that he asked the question in response to the State's "time issue" on redirect, but the trial court disagreed with trial counsel, stating, "No, sir, she didn't ask about time. . . . We've now moved into how many times did he go in and out of you, there was nothing questioned about that and I am not going to speculate as to how long it takes to go in and out[.]" The trial court noted that trial counsel could have objected to the State's redirect-examination questions and that the trial court would have sustained the objection. However, the trial court did not "chastise" trial counsel.

Regardless, even if trial counsel was deficient for failing to object to the State's questions, the Petitioner has failed to demonstrate prejudice. The Petitioner contends that trial counsel's failure to object "allowed the State to reiterate over and over that the incident happened in April . . . . In failing to object to the State's questioning as it appears on page 309, trial counsel failed to prevent the State from discounting the discrepancies in [the victim's] various disclosures." Our review of the trial transcript, though, shows that trial counsel attacked the victim's credibility throughout the trial by pointing out discrepancies between her trial testimony, her statements to the police, and her forensic interview. Therefore, we conclude that the Petitioner has failed to show that trial counsel's failure to object changed the outcome of his case.

Next, the Petitioner contends that trial counsel should have objected to Dr. Lakin's testimony. He claims that while Dr. Lakin was qualified to testify as an expert in pediatrics, she was not qualified to testify as an expert in child maltreatment and child sexual assault, was not qualified to testify about a child's ability to recall information, was not qualified to testify about a study involving thirty-six teenage girls, and was not

qualified to testify about the victim's sexual assault examination because she did not conduct the examination herself. Again, the State argues that the Petitioner has waived the issue because he failed to include it in his amended petition and failed to raise it at the evidentiary hearing. This time, we agree with the State.

At trial, Dr. Lakin testified that she was "Board Certified in child abuse pediatrics" and that her specialty encompassed physical and sexual assault, emotional and psychological abuse, and neglect. Trial counsel did not challenge her qualifications, and the trial court allowed her to testify as an expert "in the field of pediatrics and child maltreatment and sexual assault." Dr. Lakin testified about the victim's sexual assault examination, the victim's ability to recall when the sexual abuse occurred, and a study that was conducted on thirty-six teenage girls.

In the Petitioner's amended petition for post-conviction relief, he alleged that trial counsel should have objected to questions that called for speculation by Dr. Lakin and that were outside her area of expertise as a pediatrician, noting that she was allowed to testify about a child's ability to remember past experiences. Likewise, he argued at the evidentiary hearing that trial counsel should have objected to questions that were outside the scope of her pediatric expertise. On appeal, the Petitioner argues that trial counsel should have objected to Dr. Lakin's testimony because she was not qualified to testify as an expert in child maltreatment and child sexual assault pursuant to Tennessee Rule of Evidence 702 and because she did not provide the foundational reliability for the study conducted on teenage girls as required by Tennessee Rule of Evidence 703. "Issues not included in a post-conviction petition may not be raised for the first time on appeal and are waived." Bobby J. Croom v. State, No. W2015-01000-CCA-R3-PC, 2016 WL 690689, at *8 (Tenn. Crim. App. at Jackson, Feb. 19, 2016) (citing Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005); Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004)). In any event, the Petitioner did not call Dr. Lakin as a witness at the evidentiary hearing so that he could challenge her qualifications as an expert in child maltreatment or sexual assault or challenge the foundational reliability of the study. Therefore, we conclude that he is not entitled to relief.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE