IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2016

**MANSOUR BIN EL AMIN v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 41100797      William R. Goodman, III, Judge**

---

**No. M2016-00048-CCA-R3-PC – Filed February 24, 2017**

---

The Petitioner, Mansour Bin El Amin, filed a petition for post-conviction relief from his conviction of theft of property valued at $1,000 or more but less than $10,000. In the petition, the Petitioner alleged that his trial counsel was ineffective. The Petitioner also filed a motion for the post-conviction court to approve funds for a private investigator to locate witnesses for the Petitioner's case. The post-conviction court denied the petition and the motion, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the Appellant, Mansour Bin El Amin.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Helen Young, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

The Petitioner was charged with aggravated burglary and theft of property valued at $1,000 or more but less than $10,000. At trial, the victim, Laurien McDowell, testified that she lived alone in an apartment in a duplex. State v. Mansour Bin El Amin, No. M2012-01261-CCA-R3-CD, 2013 WL 2393061, at *1 (Tenn. Crim. App. at Nashville,

May 31, 2013). She spent the night of June 18, 2011, away from the apartment. When she returned around 7:00 a.m. the next morning, she discovered that a flat screen television, an Xbox video game system, a watch, four jewelry chains, a laptop computer, and some DVDs were missing. The victim estimated that the laptop computer was worth $120, the television was worth $350, the four missing jewelry chains were worth $115 each, and the Xbox was worth $300. The victim went to the apartment of her next-door neighbor, Mikia Jackson, and called the police. Initially, the victim thought that Jackson's fiancé, who had been gone all night, was responsible for the burglary. However, suspicion turned to the Petitioner when Jackson told the victim that the Petitioner came to Jackson's apartment around 10:00 or 11:00 p.m. the night before to use her telephone.

Daniel West testified that at the time of the offense, he and his wife, Janazea West, were allowing the Petitioner to live with them. Id. at *2. Their apartment was approximately fifteen minutes from the victim's apartment. On the night of June 18, 2011, Mr. West went to bed around 10:00 p.m. Around 12:30 a.m., he went to the restroom and noticed a flat-screen television on the couch in the living room. When he woke around 6:00 a.m., the television was still there, and the Petitioner was in the apartment. Mr. West asked from where the Petitioner had gotten the television, and the Petitioner said "that he 'had made a lick,'" which Mr. West thought meant the Petitioner had committed a robbery. Id. Thereafter, the Wests called Detective Nicholas Newman and the victim. They offered to return the television to the victim's apartment "rather than have the police come to their apartment." Id. at *3.

Mrs. West testified that at the time of the offense, the Petitioner and Mrs. West's brother, Jamez Hardy, were living in the Wests' apartment. Id. at *4. On the morning of June 19, Mrs. West woke and saw a television in her closet. Afterward, she went to the store with the Petitioner, and he "told her he 'made a lick.'" She told him to remove the stolen property from her residence. Thereafter, she noticed that she "had three missed calls from an unfamiliar number." Id. at *3, 4. Mrs. West returned the calls and spoke with Jackson. Id. at *3. Mrs. West told Jackson "that a television was in her closet and that her husband told her a watch was there." Id. Mrs. West promised to return the stolen property. Id. at *4. To avoid leaving their fingerprints on the victim's television and watch, the Wests made the Petitioner put those items into their vehicle. The police met the Wests at the end of the victim's driveway, and Detective Newman took the television and watch from the vehicle. Id. at *3, 4.

Clarksville Police Detective Brian Tenery testified that he went to the victim's duplex, spoke with the victim, and got a list of the stolen property. Id. at *5. Jackson gave him a description of the Petitioner and told him where the Petitioner lived. Thereafter, Detective Tenery went to the Wests' apartment complex. In the parking lot, he saw a red 1988 Oldsmobile Cutlass. Detective Tenery looked inside the car and saw

the victim's Xbox. During a search of the car, Detective Tenery found a plastic garbage bag which contained the victim's video games and DVDs.

Quentin Banks testified that he had borrowed the red Cutlass from his cousin, Demarcus Reyes. Mr. Banks did not have a key to the car, could start the car without a key, and had left the car doors unlocked. Mr. Banks denied putting the stolen items in the car and asserted that he did not know the Petitioner or Brooks Robinson.

Detective Nicholas Newman testified that he did not think either the Wests or Mr. Banks were involved in the theft. Id. at *6. The Petitioner told Detective Newman that he was locked out of the Wests' apartment on the night of June 18 and that "'Q'" drove him to Jackson's apartment around 10:00 p.m. so he could use her telephone. Id. "Detective Newman said the [Petitioner] knew the property was found in Mr. Banks's car when the [Petitioner] told Detective Newman that he rode with Q." Id. The Petitioner was unable to contact Mrs. West by telephone, however, and Q drove him back to the apartment complex. The Petitioner maintained that he found the stolen television in a vacant apartment near the Wests' apartment. The Petitioner said that the television was never in the Wests' apartment. The police checked the victim's apartment and the stolen items for fingerprints. One of the Petitioner's fingerprints was found on the garbage bag containing some of the stolen items. Id. at *8. Three fingerprints belonging to Robinson were also found on the garbage bag. No other identifiable fingerprints were found on the remainder of the stolen property. Id. at *7.

The jury acquitted the Petitioner of aggravated burglary but found him guilty of theft of property valued at $1,000 or more but less than $10,000, a Class D felony. The trial court sentenced the Petitioner as a Range II, multiple offender to seven years and six months in the Tennessee Department of Correction. On direct appeal, this court affirmed the Petitioner's conviction. Id. at *1. The Petitioner did not seek permision to appeal to our supreme court.

On December 6, 2013, the Petitioner filed a petition for post-conviction relief.[1] On February 5, 2015, the Petitioner filed an amended petition for post-conviction relief. In the post-conviction petitions, the Petitioner alleged that his trial counsel was ineffective by failing to more fully investigate the case; to discuss tactical decisions with the Petitioner; to present a meaningful defense at trial, including a "third party culpability defense"; and to adequately argue for an acquittal on the charge of theft of property over $1,000. On November 12, 2015, the Petitioner filed a motion "to have a private investigator assigned to [the] Petitioner's case in order to locate witnesses that would have been instrumental to [the] Petitioner's case."

---

[1] On June 25, 2014, the post-conviction court granted the Petitioner a delayed appeal to seek permission to appeal to our supreme court and held the remaining post-conviction issues in abeyance. Our supreme court denied the application on September 18, 2014.

On December 3, 2015, at the beginning of the post-conviction hearing, the post-conviction court denied the motion for a private investigator. Turning to the issues in the post-conviction petition, the State told the post-conviction court that it did not anticipate calling the Petitioner's trial counsel as a witness because it did not think trial counsel's "testimony would add to anything."[2] The Petitioner was the sole witness at the post-conviction hearing.

The Petitioner testified that trial counsel was appointed to represent him in circuit court. According to the Petitioner, he met with trial counsel only once or twice while incarcerated, and each visit lasted five or ten minutes. Trial counsel did not provide the Petitioner with the discovery materials; however, he received the discovery materials from the court clerk and thereby learned about the State's evidence against him.

The Petitioner said that he had several court dates prior to trial. Trial counsel did not meet with the Petitioner before or after the court dates and never explained the proceedings. The Petitioner called trial counsel several times but was unable to talk with him. Additionally, the Petitioner wrote letters to trial counsel, but trial counsel did not respond to the letters. The Petitioner tried to get trial counsel to withdraw from the case.

The Petitioner said that if he had spent more time with trial counsel, he would have asked him to subpoena witnesses, namely Olivia Hampton; her sister, Neisha Hampton; and the Hamptons' grandmother, Evelyn Banks. The Petitioner said that the Hamptons could have testified that Robinson was Olivia Hampton's boyfriend and that the Hamptons, Robinson, and Mr. Banks lived together and knew the Wests. The Petitioner stated that Mrs. Banks could have testified as an alibi witness because the Petitioner was at her apartment at the time of the crime. The Petitioner maintained that Mr. Banks drove the Petitioner to Mrs. Banks's apartment around 10:00 p.m. on the night of the offense. Mrs. Banks lived "[t]hree apartments down" from the Wests. The Petitioner stayed at Mrs. Banks's apartment until 6:30 or 7:00 a.m. the next morning. When the Petitioner returned to the Wests' apartment, he saw that the door to the vacant apartment next door was open. The Petitioner went inside the vacant apartment and found the stolen television. The Petitioner told trial counsel that he had nothing to do with the theft.

---

[2] We caution that on many occasions, this court has observed "that original counsel, when available, should always testify in a post-conviction proceeding when there is an allegation that he was ineffective." State v. Hopson, 589 S.W.2d 952, 954 (Tenn. Crim. App. 1979); see Joseph Howard Green, Jr. v. State, No. M2014-00148-CCA-R3-PC, 2014 WL 7269939, at *8 (Tenn. Crim. App. at Nashville, Dec. 22, 2014), perm. to appeal denied, (Tenn. Apr. 10, 2015). This court has also asserted that "'the [S]tate should present the attacked counsel [when available] to show what occurred.'" Antonio Dwayne Johnson v. State, No. M2013-01919-CCA-R3-PC, 2014 WL 1266295, at *4 (Tenn. Crim. App. at Nashville, Mar. 27, 2014) (quoting State v. Craven, 656 S.W.2d 872, 873 (Tenn. Crim. App. 1982)).

The Petitioner said the State filed a notice that he would be impeached with his prior convictions if he testified at trial. Additionally, the prosecutor sent him "papers" warning that if he testified at trial, the State would "enhance [his] conviction" and sentence him as a Range II offender. Based upon the advice of trial counsel, the Petitioner chose not to testify at trial. The Petitioner acknowledged that he had two prior convictions of aggravated burglary, that he was a Range II offender, and that he also had juvenile adjudications for aggravated robbery, robbery, and theft.

The Petitioner noted that the victim and Jackson testified for the State at trial and that the Wests testified for the State and for the defense. Nevertheless, the Petitioner complained that trial counsel "failed to present any meaningful defense" at trial. The Petitioner alleged that trial counsel should have presented proof that the victim "blamed . . . Jackson for breaking into [the victim's] house," that the Wests did not want the police to come to their residence, and that Mrs. West's brother, Jamez Hardy, also lived at the Wests' residence at the time of the crime and should have been an alternate suspect.

The Petitioner conceded that his fingerprint was found on the trash bag containing some of the stolen items. The Petitioner theorized that his fingerprint could have been on the bag because the Wests were involved in the theft, and they had obtained the trash bag from their apartment. The Petitioner said he sent trial counsel letters outlining his theory regarding the Wests' involvement in the theft, but trial counsel and the Petitioner never discussed the Petitioner's theory.

The Petitioner wanted trial counsel to present proof that Robinson had seven or eight prior convictions of robbery and burglary. The Petitioner conceded that Robinson could not be located prior to the Petitioner's trial and that post-conviction counsel could not locate Robinson prior to the post-conviction hearing.

The Petitioner maintained trial counsel should have attempted to prove that the value of the items taken was less than $1,000. The Petitioner contended that the proof at trial at most established a connection between the Petitioner and the television and watch, not the other stolen items. The Petitioner also contended that trial counsel should have established that the State did not prove the Petitioner had possession or constructive possession of any of the stolen merchandise. The Petitioner opined that trial counsel should have attempted to prove that either the Wests, Mr. Banks, and/or Robinson were involved in the crime but that the Petitioner was not.

The Petitioner acknowledged that he was acquitted of aggravated burglary. He contended that but for the errors of trial counsel, he also would have been acquitted of theft or convicted of theft in a lesser amount.

- 5 -

On cross-examination, the Petitioner said that post-conviction counsel tried to subpoena Mrs. Banks and the Hamptons for the post-conviction hearing but that they were not present to testify.[3] The Petitioner conceded that at the time of trial, he was not upset that the three women did not testify. He explained that he thought his innocence would be proven without their testimony.

The Petitioner acknowledged that prior to trial, he received a letter from trial counsel informing him of a favorable plea offer from the State. The Petitioner acknowledged that he rejected the offer. The Petitioner also filed a complaint with the Board of Professional Responsibility about trial counsel's failure to meet with him.

The Petitioner acknowledged that his post-conviction petitions did not include claims that trial counsel failed to investigate the Hamptons or Mrs. Banks or to have them testify at trial. The Petitioner further acknowledged that he did not include his claim that trial counsel failed to communicate with him.

The post-conviction court found that the Petitioner had failed to prove that trial counsel was ineffective or that he was prejudiced by any alleged deficiency of trial counsel. On appeal, the Petitioner challenges the trial court's denial of post-conviction relief and its denial of funds to hire a private investigator.

## II. Analysis

### A. Ineffective Assistance of Counsel

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact.

___

[3] At the beginning of the hearing, post-conviction counsel stated that the Petitioner had sought "several subpoenas," that the subpoenas had been "issued by the clerk," but that the people subpoenaed "couldn't be found to be served."

See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

The Petitioner contends that trial counsel was ineffective by having insufficient contact with him and by failing to speak with the Hamptons and Mrs. Banks and call them as witnesses at trial. The State responds that the Petitioner waived these issues by failing to include them in his post-conviction petitions. This court has cautioned that "[i]ssues not included in a post-conviction petition may not be raised for the first time on appeal and are waived." Bobby J. Croom v. State, No. W2015-01000-CCA-R3-PC, 2016 WL 690689, at *8 (Tenn. Crim. App. at Jackson, Feb. 19, 2016) (citing Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005), and Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004)), perm. to appeal denied (Tenn., June 24, 2016). We agree with the State that the Petitioner's issues regarding trial counsel's insufficient contact with the Petitioner and trial counsel's failure to speak with the Hamptons and Mrs. Banks were waived.

The Petitioner also contends that trial counsel was ineffective by ignoring the Petitioner's suggested trial strategy and by not being prepared for trial. The Petitioner does not, however, specify what trial strategy trial counsel ignored or what further

preparations trial counsel should have made. Instead, the Petitioner merely cites to his own testimony in the transcript of the post-conviction hearing and provides brief parentheticals to indicate he is complaining about Mrs. Banks's being a potential alibi witness, about his fingerprint possibly being on the trash bag because the Wests got the bag from their apartment, and about the value of the items stolen and the Petitioner's constructive possession of the items. We conclude that this lackluster presentation of the issues does not comply with Tennessee Rule of Appellate Procedure 27(a)(7)(A), which mandates that a brief contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record." Generally, a failure to comply with the rules results in a waiver of the issues. See State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

Nevertheless, we briefly note that the Petitioner failed to establish any deficiency by trial counsel. The Petitioner did not present any witnesses at the post-conviction hearing that he wished had testified at trial. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit the witnesses might have offered to the Petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Moreover, regarding trial strategy, we note that "[w]hen reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics." Irick v. State, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998). Further, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991).

Finally, the Petitioner claims that trial counsel failed to challenge the sufficiency of the evidence supporting his theft conviction. This claim is belied by the record. Notably, on direct appeal, trial counsel argued

> that the evidence [was] insufficient to support [the Petitioner's] conviction because he was not in possession of any of the stolen property. He argue[d] that the evidence proved mere constructive possession of the television because [Mrs.] West possessed and returned the television and the watch and the testimony showed the property was in Mr. and [Mrs.] West's apartment. He argue[d] that although the jury did not make specific findings about what property he took, it must have found that he took some of the property found in Mr. Banks's car to reach the total value of more than $1000.

> He argue[d] that there [was] insufficient evidence for the jury to infer he exercised control over any of the property found in Mr. Banks's car other than the garbage bag because no witness placed him in or near the car and no fingerprints were found on any of the property. He also argue[d] that because the evidence show[ed] the value of the stolen property he actually or constructively possessed was less than $1000, the evidence was insufficient to prove he was guilty of theft of property valued at more than $1000.

El Amin, No. M2012-01261-CCA-R3-CD, 2013 WL 2393061, at *9. This court found no merit to the issues on direct appeal. Id. The record before us does not preponderate against the post-conviction court's finding that the Petitioner failed to establish that trial counsel was ineffective.

## B. Post-Conviction Investigator

Prior to the post-conviction hearing, the Petitioner filed a motion requesting funds for a private investigator. The post-conviction court denied the motion, noting that to grant the request would directly contradict the mandate of Tennessee Supreme Court Rule 13 section 5(a)(2) and Davis v. State, 912 S.W.2d 689 (Tenn. 1995). On appeal, the Petitioner challenges the post-conviction court's denial of his request for funds for a private investigator. However, the Petitioner's brief does not provide any facts or argument in support of his challenge. As we noted earlier, an appellate brief must contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record." Tenn. R. App. P. 27(a)(7)(A). Accordingly, the Petitioner's claim is waived.

## III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE