IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville October 30, 2018

**CHARLES PENNINGTON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 10-07093        W. Mark Ward, Judge**

_____

**No. W2017-01596-CCA-R3-PC**

_____

Petitioner, Charles Pennington, appeals the denial of his petition for post-conviction relief from his convictions for first degree felony murder and attempted especially aggravated robbery. On appeal, Petitioner asserts that he received ineffective assistance of counsel due to trial counsel's failure to investigate and present a defense regarding the victim's ownership of the gun and failure to cross-examine his codefendants regarding the details of their plea agreements. Petitioner also asserts that his due process right to a fair trial was violated by the prosecutor's knowing use of perjured testimony from one of his codefendants. Although we waive the timely filing of the notice of appeal in the interest of justice, we conclude that Petitioner's grounds for relief are waived because they were not raised in the post-conviction court. Thus, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Josie S. Holland (on appeal) and Corliss D. Shaw and Jennifer Mitchell (at hearing), Memphis, Tennessee, for the appellant, Charles Pennington.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; Amy P. Weirich, District Attorney General; and Sarah Poe and Greg Gilbert, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Trial*

Petitioner was charged with first degree felony murder, attempted especially aggravated robbery, and employing a firearm during the commission of a dangerous felony for his role in the death of the victim, Ross Penden. *State v. Charles Pennington*, No. W2012-01459-CCA-R3-CD, 2013 WL 6500153, at *1 (Tenn. Crim. App. Dec. 9, 2013), *perm. app. denied* (Tenn. Apr. 8, 2014). The proof at trial established that the victim returned to Memphis on June 6, 2010, with $7,000 in cash he had received for work he performed on his sister's home in Texas. On June 7, officers with the Memphis Police Department responded to a call regarding a carjacking in progress and shots fired. The officers discovered the victim dead from a single gunshot wound to the chest in the front seat of his pickup truck with the engine still running. *Id*. Petitioner's fingerprints were found on the vehicle registration, which appeared to have been removed from the glove compartment and left on the passenger seat. *Id*. at *4. The victim's wallet contained $39, and no other money was found in the truck. *Id*. Eyewitnesses reported seeing a red truck driving down the street with a white man and black man inside fighting over a gun, and one was able to identify Petitioner from a photo lineup as the person struggling with the white man. *Id*. at *3-4.

Both of Petitioner's codefendants, Demonique Harris and Jerome White, testified against him. Ms. Harris testified that she knew the victim through a friend but denied that she was "turning tricks" with the victim. *Id*. at *1-2. On June 7, 2010, the victim picked up Ms. Harris and agreed to drive her to a laundromat in Arkansas because she did not have any clean clothes. While at the laundromat, Ms. Harris noticed that the victim had a couple thousand dollars in cash. Ms. Harris became angry when the victim took his cellphone away from her after she used it to call Mr. White, her boyfriend at the time. After washing and drying her clothes, Ms. Harris and the victim returned to Memphis, and Ms. Harris asked the victim to drive her to Mr. White's mother's house. The victim "stopped the truck and asked if he could 'F [her] in the booty hole like he done [sic] to Keira and them.'" *Id*. at *1 (alterations in original). Ms. Harris hit the victim after he grabbed her leg. The two struggled briefly. Ms. Harris grabbed the victim's cellphone from the floor, called Mr. White, "and said, '[T]his white B just put his hands up on me.'" *Id*. The victim grabbed the phone and slapped Ms. Harris two or three times in the face. Ms. Harris began crying, and the victim began cussing. The victim dropped Ms. Harris off, and she walked the rest of the way to Mr. White's mother's house.

Ms. Harris was angry and told Mr. White what happened. She then told Mr. White that she had seen the victim with some money and that they were going to rob him. Mr. White agreed and then went outside to speak to Petitioner, who also agreed to participate in the robbery. Ms. Harris called the victim several times and asked him to come pick her up. Ms. Harris, Mr. White, and Petitioner walked down the street to wait for the victim. Mr. White and Petitioner hid from view when the victim finally drove up to where Ms. Harris was standing on the sidewalk. Ms. Harris got into the truck, and

Petitioner "entered behind her with a black 40-caliber gun." *Id*. at *2. The victim and Petitioner "began tussling over the gun," and Ms. Harris became scared and jumped into the back seat. *Id.* The victim was driving the truck with one leg while continuing to struggle with Petitioner over the gun. Ms. Harris opened the back door and fell out of the truck, leaving behind her purse and a bottle of baby gel. Mr. White was running after the truck, and Ms. Harris testified that he "'was like get him man, go on, get him man . . . .'" *Id.*

Mr. White testified that Ms. Harris, his girlfriend, came by his mother's house on June 7, 2010, and told him that the victim had beaten her and that she was angry. "Mr. White referred to the victim as a 'trick,' indicating that the victim purchased prostitutes." *Id*. Ms. Harris told Mr. White that the victim had a lot of money, so they decided to rob him. Mr. White saw Petitioner outside and told him about the plan to rob the victim, and Petitioner agreed to participate. Mr. White, Ms. Harris, and Petitioner walked down the street and then separated to wait for the victim. Mr. White and Petitioner discussed the plan to rob the victim over the phone. When the victim arrived to pick up Ms. Harris, Petitioner "'came out and snatched her out of the [truck],'" then got into the victim's truck himself. *Id*. at *3. Mr. White ran up to the truck, but it sped away. Mr. White testified that he did not know if Petitioner had a gun.

The jury convicted Petitioner as charged of first degree felony murder and attempted especially aggravated robbery and found him not guilty of employing a firearm during the commission of a dangerous felony. *Id*. at *1. Petitioner received a total effective sentence of life in prison. On direct appeal, Petitioner challenged the sufficiency of the evidence. This Court affirmed his convictions, finding that the testimony of Ms. Harris and Mr. White was adequately corroborated. *Id*. at *7. The Tennessee Supreme Court denied permission to appeal on April 8, 2014.

*Post-Conviction*

On September 26, 2014, Petitioner filed a pro se petition for post-conviction relief, alleging that he received ineffective assistance of counsel. Counsel was appointed and filed amended petitions on March 11 and August 21, 2015. Substitute counsel was appointed and filed a third amended petition on March 11, 2016. Apparently, a petition for error coram nobis was filed on April 7, 2016, alleging that Mr. White wished to recant his trial testimony, though the petition is not contained in the record on appeal.[1] In total, Petitioner alleged approximately fifteen separate grounds for ineffective assistance of counsel, including trial counsel's failure to properly investigate the case and prepare possible defenses, failure to negotiate a plea bargain, failure to properly cross-examine

---

[1] We glean this information from the trial court's order denying both the petition for post-conviction relief and petition for writ of error coram nobis.

witnesses, and failure to object to prosecutorial misconduct. A hearing was held on December 2, 2016, at which Petitioner, Mr. White, trial counsel, and Assistant District Attorney General Patrick Neal Oldham, the lead prosecutor at trial, testified.

Mr. White recanted his trial testimony that he and Petitioner planned to rob the victim. Like Petitioner, Mr. White was originally charged with first degree murder, especially aggravated robbery, and employment of a firearm, but Mr. White entered an *Alford* plea and received a fifteen-year sentence in exchange for his testimony against Petitioner. Mr. White stated that he wanted "[t]o tell the truth of what really went on" and that his testimony at Petitioner's trial was "really false." According to Mr. White, there was never a plan to rob the victim. Instead, he received a phone call that his "girlfriend was getting beat up by someone," so he and Petitioner went to help Ms. Harris. Mr. White agreed that he did not know what happened once Petitioner was inside the vehicle.

Mr. White claimed that he was coerced into testifying falsely by the prosecutor. Mr. White said that the prosecutor did not tell him how to testify but "told me what I needed to say and what I didn't need to say." Mr. White said the prosecutor told him to be truthful "[i]n certain ways," meaning that "things that I told him that was the truth that happened, he said that in order to get my deal I couldn't say that." Mr. White stated that he had discussed testifying at the post-conviction hearing with his attorney, who was present in the courtroom, and understood that he could be charged with perjury if he testified falsely. The State informed the post-conviction court that Mr. White's testimony at the post-conviction hearing "would probably be violating the plea agreements that he had in this case" in addition to potentially subjecting him to perjury charges. Mr. White agreed that he lied under oath with regard to a material component of the case and understood that his current testimony was in direct contradiction to Ms. Harris's trial testimony.

Petitioner asserted that if trial counsel had properly prepared for Mr. White's testimony by interviewing him prior to trial or requesting *Jencks* material, "it probably would have come out beforehand that he was testifying falsely." Trial counsel testified that she did not interview either codefendant prior to trial because they were both represented by counsel. Trial counsel was informed the first morning of trial that Mr. White would be testifying for the State; however, trial counsel knew that there was a possibility that Mr. White would testify and warned Petitioner of such. Trial counsel did not recall cross-examining Mr. White about the details of his plea agreement and conceded that co-counsel may have conducted the cross-examination. Because Mr. White did not make a pre-trial statement, there was no *Jencks* material to request. Trial counsel agreed that Mr. White's testimony at the hearing was different than his trial testimony. Without a pre-trial statement to compare it to, trial counsel "had no idea" whether Mr. White's trial testimony was coerced by the prosecutor. Mr. Oldham testified

that Mr. White did not have a formal plea agreement prior to his trial testimony, but there was an agreement that he would get favorable consideration if he testified truthfully. Mr. Oldham denied telling Mr. White what to say or correcting him as to how he answered the questions.

In addition to failing to interview the codefendants prior to trial, Petitioner testified that trial counsel failed to adequately investigate the case, prepare for trial, and present a defense. Petitioner wanted to present as a defense that he "didn't know what was going on" with respect to Ms. Harris's and Mr. White's plan to rob the victim. According to Petitioner, "I went to go aid Mr. White because he was having a problem with this man and this man pulled a gun on me and then that's how me and this man got into a struggle over the gun and all this happened[.]" Petitioner testified that he accidentally shot the victim during the struggle. Trial counsel stated that it was her "understanding and there was no proof to the contrary that the gun belonged to the deceased and that the deceased produced this gun after the argument with Mr. White and [Petitioner]." Trial counsel explained that her defense theory "was that this was a dispute, an argument that got out of hand . . . because [Petitioner] was not armed, because the gun did not belong to [Petitioner] and he didn't introduce the weapon into the equation[.]" Trial counsel recalled that she consulted with co-counsel, who had more trial experience, because she was "desperate" for "another approach that we could use that maybe we could get a voluntary manslaughter or things of that nature, instead of murder in the first degree."

Testimony was also presented regarding trial counsel's cross-examination of Ms. Harris. According to Petitioner, the State engaged in prosecutorial misconduct by interrupting trial counsel's cross-examination by objecting and requesting bench conferences. Petitioner conceded that some of the objections were sustained on the basis of relevance and hearsay. At one point, trial counsel was allowed to ask questions of Ms. Harris during a jury-out hearing. According to Petitioner, even though the trial court ruled that trial counsel would be allowed to ask that line of questions, she never followed through once the jury returned to the courtroom. Specifically, Petitioner believed trial counsel should have impeached Ms. Harris with her prior statements and asked whether Ms. Harris was "previously involved with the victim through prostitution and all that."

Trial counsel knew that Ms. Harris would testify that she organized the robbery because she had pled guilty to facilitation of a felony. Trial counsel testified that she "always believed" that Mr. White and Ms. Harris "set [Petitioner] up." Trial counsel noted that phone records showed calls from the victim's phone to Petitioner even though the victim did not know Petitioner. Trial counsel also tried to bring out in her cross-examination of Ms. Harris the fact that she claimed to have gone to Arkansas to wash her clothes but "had no soap or anything" in her purse. Trial counsel did not recall the jury-out hearing during Ms. Harris's cross-examination. Trial counsel recalled that her

investigation revealed that "Demonique and several of her friends were turning tricks with this deceased," but the prosecutor objected to that line of questioning. Trial counsel did not recall the trial court's ruling but stated that it may have been a "limited ruling" that she could ask about prostitution with "this particular person" rather than "generically" because Ms. Harris did not have any convictions. Trial counsel testified that she made a strategic decision not "to beat a dead horse" with how many questions she asked on the subject and believed that "the jury got the point anyway, especially when it's a 15-year-old and it's a 55-year-old white male down in south Memphis, why else is he there."

Testimony was also presented regarding several other grounds of ineffective assistance of counsel alleged in the petition, including a supposed plea offer for twenty years that Petitioner wanted to accept in his best interest but that was withdrawn by the State; an in-court fingerprint examination; certain remarks made by the prosecutor in closing argument regarding the charge of employment of a firearm during the commission of a dangerous felony, even though Petitioner was ultimately acquitted of that charge; trial counsel's failure to request involuntary manslaughter as a lesser-included offense, even though such an offense does not exist in Tennessee; and trial counsel's supposed deficiencies during sentencing, even though Petitioner received concurrent minimum sentences. After taking the matter under advisement, the post-conviction court filed a written order denying both the petition for post-conviction relief and petition for writ of error coram nobis on December 13, 2016.

*Notice of Appeal*

Petitioner filed a pro se notice of appeal on August 9, 2017.[2] On November 21, 2017, Petitioner filed in this Court a motion for appointment of counsel. In an order issued on December 1, 2017, this Court noted that the notice of appeal was untimely but that the record did not contain an order permitting post-conviction counsel to withdraw. This Court remanded the matter to the trial court for a determination of whether Petitioner knowingly waived his right to counsel on appeal and whether counsel should be appointed to represent Petitioner on appeal. Appellate counsel was appointed, who subsequently filed a motion to late-file a notice of appeal on February 16, 2018. In an order issued March 1, 2018, this Court found that the notice of appeal and appellate record had already been filed and deferred consideration of appellate counsel's motion.

The State argues that Petitioner's appeal should be dismissed because the notice of appeal was not timely filed and the interests of justice do not require waiver. Under

---

[2] The certificate of service and signature of the notary public are dated June 21, 2017. Even if we were to consider this as the date of filing under the "mailbox rule," *see* Tenn. R. Crim. P. 49(d), it would still be more than 30 days after the date of the trial court's final order.

Tennessee Rule of Appellate Procedure 4(a), the notice of appeal "shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from." However, in criminal cases, including post-conviction proceedings, the notice of appeal is not jurisdictional, and this Court may waive the timely filing of the notice "in the interest of justice." *Id.*; *State v. Scales*, 767 S.W.2d 157, 158 (Tenn. 1989). In determining whether waiver is appropriate, this Court must consider the nature of the issues presented for review, the reasons for and length of the delay, and any other relevant factors. *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver." *Id.*

The State asserts that Petitioner offered no explanation for the nearly seven-month delay in filing the notice of appeal. Additionally, the State argues that the grounds presented for relief on appeal "were not developed in the court below," and thus "the nature of the issues presented counsels against a waiver in the interest of justice." Petitioner responds that he filed an untimely notice of appeal because his post-conviction attorney failed to either file a notice of appeal or appropriately withdraw from his case. Additionally, upon remand from this Court, the post-conviction court found that Petitioner did not knowingly waive his right to counsel on appeal. When appellate counsel attempted to seek permission from this Court to late-file a notice of appeal, the motion was deemed to be superfluous. Because it appears from the record that post-conviction counsel did not appropriately withdraw from representation and that Petitioner did not knowingly waive his right to counsel on appeal, we shall waive the timely filing of his notice of appeal in the interest of justice.

*Analysis*

On appeal, Petitioner argues that he received ineffective assistance of counsel due to trial counsel's failure to properly investigate the case and present a defense. Specifically, Petitioner focuses on the victim's ownership of the gun "because such information speaks to whether [Petitioner] had the requisite intent to commit especially aggravated robbery when he climbed in the truck with [the victim] and [Ms.] Harris." Additionally, Petitioner argues that trial counsel was ineffective for failing to cross-examine Mr. White and Ms. Harris regarding their plea bargains. Finally, with regard to Mr. White's recanted testimony, Petitioner concedes that his petition for writ of error coram nobis was not properly preserved for appeal and that he may not use the testimony to re-litigate the sufficiency of the evidence. However, Petitioner argues that he is entitled to post-conviction relief because the State's knowing use of false testimony violated his due process right to a fair trial. The State responds that Petitioner's claims are waived for failure to raise them in the post-conviction court.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

A post-conviction petition must contain "all claims known to the petitioner for granting post-conviction relief." T.C.A. § 40-30-104(d); *see also* T.C.A. § 40-30-106(d) (stating that the petition must "contain a clear and specific statement of all grounds upon which relief is sought"); Tenn. Sup.Ct. R. 28, § 5(E) ("The petition shall contain . . . each and every error that petitioner asserts as a ground for relief, including a description of how petitioner was prejudiced by the error(s)."). "A ground for relief is waived if a petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," except in certain circumstances, none of which are present in this case. T.C.A. § 40-30-106(g). Issues not addressed in the petition for post-conviction relief and ruled upon by the post-conviction court may not be raised for the first time on appeal in this Court. *See Charles Lee Rochell v. State*, No. M2010-00150-CCA-R3-PC, 2010 WL 3774561, at *9 (Tenn. Crim. App. Sept. 29, 2010) (citing *Walsh v. State*, 166 S.W.3d 641, 645-46 (Tenn. 2005)), *perm. app. denied* (Tenn. Feb. 16, 2011); *Charles Orlando Fields v. State*, No. W2003-02051-CCA-R3-PC, 2004 WL 1405012, at *5 (Tenn. Crim. App. June 23, 2004), *perm. app. denied* (Tenn. Dec. 20, 2004). Moreover, "the plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied in post-conviction proceedings to grounds that would otherwise be deemed either waived or previously determined." *Grindstaff v. State*, 297 S.W.3d 208, 219 (Tenn. 2009) (citing *State v. West*, 19 S.W.3d 753, 756-57 (Tenn. 2000)).

Petitioner concedes that the issues he now raises on appeal were not specifically enumerated in his pro se or amended petitions for post-conviction relief. However, he asserts that the petitions generally referred to trial counsel's failure to investigate and prepare a defense, trial counsel's deficient cross-examination of Ms. Harris, and

prosecutorial misconduct. Petitioner also argues that even if this Court finds that these issues were not adequately addressed in the petitions, this Court should review the issues for plain error.

Though the issue of the ownership of the gun was mentioned during trial counsel's testimony—specifically her "understanding" that the gun belonged to the victim, that "there was no proof to the contrary," and that it supported her defense theory that this was "an argument that got out of hand"—it is clear from the rest of the testimony presented that Petitioner's allegation that trial counsel was deficient in investigating and preparing a defense was primarily focused on trial counsel's failure to interview Mr. White prior to trial and failure to impeach Ms. Harris during cross-examination. Thus, the trial court did not make any specific findings with regard to trial counsel's performance in investigating and presenting a defense regarding the ownership of the gun. Moreover, Petitioner has not proven by clear and convincing evidence that the gun in fact belonged to the victim, especially given Ms. Harris's trial testimony that Petitioner was armed with a black 40-caliber gun when he climbed into to the truck behind her. *See Charles Pennington*, 2013 WL 6500153, at *2. A passing comment by trial counsel regarding her recollection of the evidence is insufficient to warrant overturning Petitioner's conviction. We conclude that this issue was not properly presented to and ruled upon by the post-conviction court and, thus, is waived.

As to the cross-examination of Petitioner's codefendants, much was made over trial counsel's questions (or lack thereof) regarding Ms. Harris's engaging in prostitution. Petitioner did not allege in any of the petitions that trial counsel was ineffective for failing to cross-examine the codefendants regarding the details of their plea agreements. Moreover, no evidence was presented on the issue other than trial counsel's testimony that she could not recall asking such questions of Mr. White and Mr. Oldham's testimony that Mr. White did not have a formal plea agreement. The post-conviction court found that trial counsel made a strategic decision in how she cross-examined Ms. Harris regarding prostitution but did not make any specific findings regarding trial counsel's cross-examination into the codefendants' plea agreements. Again, we conclude that this issue was not properly presented to and ruled upon by the post-conviction court and, thus, is waived.

None of the petitions for post-conviction relief contain the prosecutor's alleged knowing use of false testimony as an independent constitutional violation warranting post-conviction relief. *See State v. Spurlock*, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993) (citing *Pyle v. Kansas*, 317 U.S. 213 (1942); *Mooney v. Holohan*, 294 U.S. 103 (1935)). Instead, Petitioner alleged that trial counsel was ineffective for failing to raise prosecutorial misconduct in the motion for new trial. Petitioner's testimony at the hearing clarified that the alleged prosecutorial misconduct was the prosecutor's objections during the cross-examination of Ms. Harris and statements during closing

argument regarding the charge of employment of a firearm during the commission of a dangerous felony. Mr. White's recanted testimony was apparently presented to the post-conviction court through a petition for writ of error coram nobis, which is not in the record before this Court and which Petitioner concedes was not preserved for appeal. Moreover, Mr. White's testimony that he was coerced into testifying falsely was flatly denied by Mr. Oldham and was discredited by the post-conviction court. We will not second-guess such credibility determinations, despite Petitioner's insistence that Mr. White's strong incentives to stick to his trial testimony marshal in favor of his credibility. *See Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013) (stating that appellate courts will "generally defer to a post-conviction court's findings with respect to witness credibility"). Because the post-conviction court was not given the opportunity to consider Petitioner's due process claim, this issue is also waived.

*Conclusion*

We conclude that the issues raised by Petitioner on appeal are waived for failure to address them in the post-conviction court. We decline to review the issues for plain error as such is not applicable in post-conviction proceedings. *See Grindstaff*, 297 S.W.3d at 219. Thus, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE