IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2023

**DEMARCUS KEYON COLE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-22-2   Donald H. Allen, Judge**

_____

**No. W2023-00517-CCA-R3-ECN**

_____

The petitioner, Demarcus Keyon Cole, appeals the dismissal of his petition for writ of error coram nobis, which petition challenged his 2013 Madison County Circuit Court jury convictions for felony murder and especially aggravated robbery, arguing that he is entitled to a new trial due to newly discovered evidence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and MATTHEW J. WILSON, JJ., joined.

Demarcus Keyon Cole, Only, Tennessee, pro se (on appeal); and William Milam, Jackson, Tennessee (at hearing), for the appellant, Demarcus Keyon Cole.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Alfred Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Madison County Circuit Court jury convicted the petitioner of felony murder and especially aggravated robbery for his role in the shooting of the victim, Demetris Cole, during a robbery. *See State v. Demarcus Keyon Cole*, No. W2013-02850-CCA-R3-CD, 2014 WL 7269813, at *1 (Tenn. Crim. App., Jackson, Dec. 22, 2014). The trial court imposed consecutive terms of life imprisonment and 20 years. *Id.*

According to the evidence presented at trial, the petitioner, the victim, and Ms. Ebony Jenkins were using drugs and drinking beer at the petitioner's apartment during

the night of October 28, 2011, and the early morning hours of October 29 while the petitioner's young son slept in another room. *Id.* During the course of the night, some of the petitioner's neighbors purchased marijuana from the victim. *Id.* The petitioner left the apartment at approximately 1:00 a.m., and at around 3:30 or 4:00 a.m., the victim left the apartment to go to a store. *Id.* Ms. Jenkins followed the victim outside to get a cigarette from him, and she saw the petitioner and two other men in the petitioner's truck. *Id.* The victim briefly spoke to the petitioner before leaving. *Id.*

At approximately 3:53 a.m., the petitioner called his then-girlfriend, Kyneshia Williams, and asked her to "set up [the victim] at a store in Jackson so that [the petitioner] could rob him," and the petitioner told her that he hoped to obtain "dope and money." *Id.* at *5. Ms. Williams refused to participate, and the petitioner asked whether she was certain and instructed her to "let me know so I can make other plans." *Id.*

Ms. Jenkins testified that after the victim returned to the petitioner's apartment, he received a telephone call from someone who wanted to purchase marijuana, and the victim began weighing marijuana in preparation for the transaction. *Id.* at *1. The petitioner and two other men entered the apartment and walked to the back of the apartment as the victim asked which of them wanted the marijuana. *Id.* One of the men returned to the living room, announced the robbery, and pointed a gun at the victim, while the other man ordered Ms. Jenkins to cover her head with blankets. *Id.* Ms. Jenkins heard one of the men demand that the victim empty his pockets followed by what she believed to be the man beating the victim. *Id.* The men called the petitioner from the back, and the petitioner said, "I got a son, I got a son." *Id.* at *2. Ms. Jenkins stated that the petitioner did not sound sincere, and she believed he was feigning shock at the events. *Id.* She heard one of the men order the petitioner and the other man to leave, followed by the sound of people exiting the apartment. *Id.* She then heard a total of five gunshots, and once the remaining man exited the apartment, she removed the blankets from her head to find the victim lying on the floor and covered in blood. *Id.* She then called 9-1-1. *Id.*

The victim sustained gunshot wounds to his head, upper thorax, chest, abdomen, and hip. *Id.* He was transported to a hospital where he succumbed to his injuries on October 31, 2011. *Id.* Officers recovered five .32 caliber shell casings and one spent .32 caliber bullet in the living room of the apartment. *Id.* A firearms expert determined that the five .32 caliber spent shell casings were fired from the same gun and that the spent .32 caliber bullet and two bullets from the victim's body were fired from the same gun. *Id.* Officers did not release any information about where the victim had been shot or what caliber firearm had been used. *Id.* at *4. However, Ms. Williams testified that on the Sunday following the shooting, the petitioner came to her home and stated that the victim had been shot five times with a hollow point .32 caliber firearm, including twice in his head, once in his arm, once in his chest, and once in another location. *Id.* at *5.

- 2 -

The petitioner subsequently gave a statement to the police claiming that he also was a victim of the robbery, had been forced at gunpoint to drive the perpetrators from the scene, and was not shot because he had his young son with him. *Id.* at *3. Ms. Williams testified that when she spoke to the petitioner following the shooting, he did not mention being robbed or kidnapped by the shooters. *Id.* at *5.

Officers processed the petitioner's vehicle and found a green and yellow jacket in the front passenger seat, which the petitioner claimed belonged to him. *Id.* at *4. A store surveillance photograph taken at 2:56 a.m. prior to the shooting showed the victim wearing a green and yellow jacket prior to his death, and the victim's mother testified that she and her family searched for the jacket following the victim's death but were unable to find it. *Id.* at *4-5. The petitioner had his cell phone in his pocket, but all incoming and outgoing calls and text messages had been erased. *Id.* at *4. The petitioner was "extremely evasive" when asked about the erased messages and calls and gave multiple explanations, including the suggestion that the perpetrators did it. *Id.*

Sergeant Chris Chestnut of the Jackson Police Department ("JPD") sought another interview with the petitioner on October 31, 2011, but the petitioner called Sergeant Chestnut multiple times throughout the day and provided various reasons why he could not meet with the officer, including a claim that he had a meeting at work. *Id.* However, the human resource generalist at the company where the petitioner worked testified that the petitioner did not work on October 31 and that there was no record of his having drawn any pay for working on October 31. *Id.*

Sergeant Chestnut met with the petitioner on subsequent occasions during which the petitioner denied ever owning or possessing any firearms. *Id.* A few weeks after the meetings, the petitioner informed Sergeant Chestnut that following their October 29 meeting, he returned to his apartment and realized that two firearms were missing. *Id.* The petitioner claimed that he did not use the firearms and had not realized that the firearms were in his apartment until after he noticed that they were missing. *Id.* However, Ms. Williams testified that the petitioner previously had shown her a .40 caliber firearm and a .32 caliber firearm that he kept in his apartment. *Id.* at *5. Officers retrieved photographs from the petitioner's cell phone that appeared to show two different firearms inside the petitioner's apartment, one of which was a medium to large caliber semiautomatic firearm and the second of which was a small caliber firearm consistent with a .22 caliber, .25 caliber, or .32 caliber firearm. *Id.* at *4.

The State also presented the testimony of LeGraine Poston, who had a prior conviction for attempted aggravated burglary and spoke to the petitioner while they were

- 3 -

incarcerated at the Madison County Jail in February 2013. *Id.* at *5. Mr. Poston testified that

> the [petitioner] said that he had set the victim up for a robbery because he wanted to "get high," that all that was supposed to happen was a robbery but that things had not gone according to plan, and that he did not want to take the blame for something that someone else had done. [Mr. Poston] said he waited a couple of months to contact Sergeant Chestnut to tell him what he had learned because it was difficult and dangerous to contact the police while in jail. On cross-examination, he was unable to say why the [petitioner] had picked him to confide in out of all the inmates that shared their pod. On redirect, he testified that in his statement to Sergeant Chestnut, he said that the [petitioner] told him that all the victim had to do was to give up his money.

*Id.* Curtis Blake Bailey, another inmate at the jail, confirmed seeing the petitioner and Mr. Poston conversing. *Id.*

The petitioner's judgments of conviction were entered on November 15, 2013.[1] This court affirmed the petitioner's convictions on direct appeal. *See Demarcus Keyon Cole*, 2014 WL 7269813, at *1. The petitioner subsequently filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel at trial. The post-conviction court denied the petition, and this court affirmed the post-conviction court's judgment on appeal. *See Demarcus Keyon Cole v. State*, No. W2015-01901-CCA-R3-PC, 2016 WL 2859196, at *1 (Tenn. Crim. App., Jackson, May 11, 2016).

On January 4, 2022, the petitioner filed a pro se petition for writ of error coram nobis, claiming newly discovered evidence that the prosecutor and law enforcement threatened Ms. Williams with criminal charges and the removal of her children from her custody to compel her to testify at trial. The coram nobis court appointed counsel to represent the petitioner and set the matter for an evidentiary hearing. On May 6, 2022, the petitioner filed a pro se amended petition, claiming newly discovered evidence of a supplemental police report showing that officers interviewed Mr. Poston on February 13, 2013, regarding his conversation with the petitioner at the jail, more than two months before Mr. Poston submitted a formal written statement on April 25, 2013. The petitioner asserted that the State knowingly withheld the report and that the report established that Mr. Poston was seeking leniency for his pending criminal charges and was acting as an agent for the State when he spoke to the petitioner at the jail. On June 24, 2022, the

---

[1] Although the judgments were not included in the appellate record, this court previously entered an order taking judicial notice of the record from the petitioner's direct appeal.

- 4 -

petitioner, through counsel, filed an amended petition adopting the allegations set forth in the petitioner's pro se amended petition. The State filed responses to each petition, asserting that the petition was filed outside the one-year statute of limitations, that due process principles did not require tolling of the statute of limitations, and that the petitioner is not otherwise entitled to coram nobis relief.

At the commencement of the evidentiary hearing on April 3, 2023, the petitioner, through counsel, announced that he was proceeding on the claim related to the supplemental report of Mr. Poston's interview with police. The petitioner entered as an exhibit Mr. Poston's handwritten statement to the police dated April 25, 2013, and the supplemental police report of an interview with Mr. Poston on February 12, 2013. Mr. Poston's handwritten statement and the supplemental report included information that was consistent with Mr. Poston's testimony at trial. The supplemental report included additional information regarding the gang affiliations of the other two men involved in the shooting and Mr. Poston's knowledge of the men, as well as Mr. Poston's knowledge of unrelated criminal offenses committed by others.

Heather Cohen, a licensed private investigator, testified that in November 2020, the petitioner hired her to attempt to locate new evidence. She requested information from JPD and the district attorney general's office, and she believed she found the supplemental report relating to Mr. Poston in the JPD's files in late 2020 or early 2021. She sent the documents that she obtained and her final report to the petitioner's parents in November 2021.

During cross-examination, Ms. Cohen testified that she made a request for the records through the Open Records Act and that no one resisted in providing the documents. When asked whether she believed she would have received a different response had she made a similar request in 2013, Ms. Cohen replied, "Probably not."

Trial counsel, who had 12 years of experience as a criminal defense attorney, testified that he was appointed to represent the petitioner at trial and filed a motion for discovery from the State. He stated that he recalled seeing a handwritten statement from Mr. Poston dated April 25, 2013, but he could not recall whether he had previously seen the supplemental police report of officers' interview with Mr. Poston on February 12, 2013, stating, "I honestly do not recall whether I've seen this—this other document before or not. I simply don't remember."

During cross-examination, trial counsel testified that the district attorney general's office had an open file policy that included access to law enforcement's files. He stated that at trial, he cross-examined Mr. Poston regarding his written statement, which Mr. Poston had signed. Trial counsel did not believe he would have been allowed to use

the supplemental report to impeach Mr. Poston's testimony because Mr. Poston did not sign the report. During redirect examination, trial counsel testified that he would have wanted to know if Mr. Poston had met with law enforcement on multiple occasions during a significant period of time, as such information would have led him to believe that "Mr. Poston was motivated to testify against any number of defendants as much as he could in order to gain a better position in his own criminal case."

JPD Sergeant Aubrey Richardson testified that he assisted in investigating the victim's death, interviewed Mr. Poston about multiple cases in February 2013, and prepared the supplemental report. Sergeant Richardson stated that he believed that the supplemental report was part of the investigative file that was provided to the State and trial counsel. He acknowledged that Mr. Poston had provided him with information regarding other cases before Mr. Poston had any interaction with the petitioner. Sergeant Richardson did not recall the total number of times that he met with Mr. Poston, but he recalled that he met with Mr. Poston twice regarding the petitioner's case.

Sergeant Richardson did not recall telling Mr. Poston to "[k]eep your ear to the ground." Sergeant Richardson did not know the reason for Mr. Poston's incarceration when Mr. Poston spoke to the petitioner. Sergeant Richardson stated that at one point, Mr. Poston's probation had been revoked, and Sergeant Richardson believed Mr. Poston "flattened his own sentence and received nothing for testifying at that trial." During cross-examination, Sergeant Richardson denied that Mr. Poston was acting as a State agent when he spoke to the petitioner, and Sergeant Richardson stated that he never asked Mr. Poston to serve as an informant.

The petitioner testified that although he reviewed Mr. Poston's formal written statement prior to trial, he did not review the supplemental police report prior to trial. He stated that the investigator provided his family with the files in November 2021 and that he did not receive the files that included the supplemental police report until May 3, 2022. He said that because the State did not provide the supplemental police report to him, trial counsel was unable to question Mr. Poston on cross-examination regarding his multiple meetings with the officers. The petitioner noted that although the supplemental report reflected that Mr. Poston first met with officers in February 2013, the prosecutor utilized Mr. Poston's formal statement reflecting a meeting with officers in April 2013 and questioned Mr. Poston at trial about why he waited a few months before approaching officers about his conversation with the petitioner. The petitioner maintained that the State knowingly withheld the supplemental report and utilized perjured testimony at trial. During cross-examination, the petitioner denied that he made the statements alleged by Mr. Poston and stated that Mr. Poston was "lying about everything."

At the conclusion of the hearing, the coram nobis court entered an order on April 6, 2023, dismissing the petition. The court found that the one-year statute of limitations had expired and that due process principles did not require the tolling of the statute of limitations. The court stated that to the extent that the petitioner claimed that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), such claims are not cognizable in coram nobis proceedings. The court found that regardless, the State did not suppress the supplemental report and that "[w]ith the exception of trial counsel, whose memory was not clear on the subject[,] the testimony was uniform that the evidence was made available when requested." The court declined to accredit the petitioner's testimony. The court further found that the supplemental report was "limited to some impeachment value at best" and, therefore, the petitioner failed to establish that he was entitled to coram nobis relief.

The petitioner elected to proceed pro se on appeal and filed a timely notice of appeal. On appeal, the petitioner asserts that he is entitled to equitable tolling of the statute of limitations and coram nobis relief with respect to newly discovered evidence in the form of the supplemental police report of Mr. Poston's interview with officers in February 2013. The petitioner further asserts that newly discovered evidence that Ms. Williams was coerced to testify at trial warrants coram nobis relief.

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Coram nobis relief is provided for in criminal cases by statute:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b); *see State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007) (describing standard of review as "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different" (citation omitted)). The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories but may be based upon any "newly discovered evidence relating to matters which were litigated at the trial" so long as the petitioner also

establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. T.C.A. § 40-36-105(b).

The statute of limitations for filing a petition for writ of error coram nobis is one year, *see* T.C.A. § 27-7-103; *Mixon*, 983 S.W.2d at 670, and "compliance with the timely filing requirement in Tenn. Code Ann. § 27-7-103 is an essential element of a coram nobis claim," *see Nunley v. State*, 552 S.W.3d 800, 828 (Tenn. 2018) (citations omitted). "To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period." *Id.* at 828-29 (citations omitted). The petition must either establish on its face the timeliness of the petition or "set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations." *Id.* at 829. The coram nobis court need not "hold an evidentiary hearing prior to dismissing a coram nobis petition if the petition 'fails to meet the necessary prerequisites for granting coram nobis relief.'" *Id.* (citations omitted).

Although the decision to grant or deny coram nobis relief rests within the sound discretion of the coram nobis court, *see Vasques*, 221 S.W.3d at 527-28, "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness," *Nunley*, 552 S.W.3d at 830 (citation omitted).

The petitioner set forth two claims of relief in his petition and amended petitions for writ of error coram nobis: (1) newly discovered evidence that Ms. Williams was coerced into testifying and (2) newly discovered evidence of the supplemental police report. During the evidentiary hearing, the petitioner, through counsel, abandoned the claim relating to Ms. Williams' testimony and announced that he was only pursuing the claim relating to the supplemental police report. Although the petitioner seeks relief on appeal regarding his claim that Ms. Williams' testimony was coerced, we conclude that this issue is waived. *See Walsh v. State*, 166 S.W.3d 641, 645 (Tenn. 2005) (stating that "[i]ssues not addressed in the [trial] court will generally not be addressed on appeal"); *Curtis Keller v. State*, No. W2021-00123-CCA-R3-ECN, 2022 WL 1150962, at *3 (Tenn. Crim. App., Jackson, Apr. 18, 2022) (declining to address a claim for coram nobis relief raised in a pro se petition when the petitioner abandoned the claim in the coram nobis court by failing to raise it at the hearing and incorporate it into his amended petition), *perm. app. denied* (Tenn. Aug. 3, 2022). We will address the petitioner's claim for coram nobis relief only as it relates to the supplemental police report.

The judgments in the present case were entered in November 2013; and the petitioner did not file his coram nobis petition until 2022, well past the one-year statute of limitations. The petitioner argues that the statute of limitations should be tolled because

- 8 -

the supplemental police report was newly discovered evidence that had been suppressed by the State at trial. The coram nobis court, however, found that the State did not suppress the supplemental report, stating that "[w]ith the exception of trial counsel[,] whose memory was not clear on the subject[,] the testimony was uniform that the evidence was made available when requested." Trial counsel acknowledged that the district attorney general's office had an open file policy that included access to law enforcement's files; Sergeant Richardson testified that he believed the supplemental report was included in the investigative file that was provided to the State and trial counsel; and the coram nobis court declined to accredit the petitioner's testimony regarding when he first saw the supplemental report. The petitioner failed to establish that the supplemental report was not available to him at trial or prior to the expiration of the one-year statute of limitations. Therefore, due process principles do not warrant tolling the statute of limitations.

Notwithstanding the timeliness of the petition, the coram nobis court also found that the petitioner failed to establish that he was entitled to coram nobis relief. Nothing in the supplemental police report indicated that Mr. Poston was acting as a State agent when he and the petitioner spoke at the jail. The supplemental report noted that Mr. Poston provided information on unrelated offenses involving other suspects, which the petitioner alleges could have been used as impeachment evidence at trial to establish that Mr. Poston was seeking to provide information and to testify against multiple defendants to obtain a more favorable outcome for his pending charges. At trial, trial counsel thoroughly questioned Mr. Poston on cross-examination regarding his charges and his motive for testifying against the petitioner. Mr. Poston testified that prior to the petitioner's trial, Mr. Poston was convicted of attempted aggravated burglary and was sentenced to a term of probation, that he was released from custody a few months prior to the petitioner's trial, that he did not receive any promises in exchange for his testimony at trial, and that he did not wish to testify at the petitioner's trial. In light of Mr. Poston's testimony at trial, the petitioner has failed to establish that evidence of Mr. Poston's providing information to the police about other unrelated criminal offenses might have resulted in a different judgment.

We note that the supplemental police report of Mr. Poston's February 2013 meeting with officers contradicts Mr. Poston's testimony that he did not meet with officers about his conversation with the petitioner until April 2013. However, evidence of the petitioner's guilt was particularly strong. The petitioner contacted Ms. Williams shortly before the shooting, informed her of his intention to rob the victim of money and drugs, and requested her assistance. Ms. Jenkins testified that during the robbery, the petitioner appeared to feign shock of the events. Although the petitioner was not inside the apartment when the shooting occurred, he informed Ms. Williams of details of the shooting that had not been released by officers, and he did not mention to her that he also was robbed and kidnapped. He erased text messages and the call history from his cell phone before officers

- 9 -

could search it, was untruthful to officers about his possessing firearms, one of which may have been the same caliber of the firearm used to shoot the victim, was found in possession of the victim's jacket, which the petitioner claimed belonged to him, and was uncooperative with officers during their investigation. In light of the evidence of the petitioner's guilt, we cannot conclude that the result of the proceedings might have been different had evidence from the supplemental police report been admissible at trial.

Because none of the petitioner's assertions can avail him of coram nobis relief, the coram nobis court did not err in dismissing his petition. Accordingly, we affirm the judgment of the coram nobis court.

_____
JAMES CURWOOD WITT, JR., JUDGE